EXHIBIT 6 – NATIONAL INDEMNITY POLICY TO ONE WAY
HAULING

CERTIFIED POLICY

To the best of my knowledge, the following is a true and accurate copy of

Policy Number ____74TRS100541_____ as of _____05/26/2020_____

and documentation of cancellation.

_____

Heather Sachau, Policy Services Administrator

Endorsement # 2

M-5271 (04/2007)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CANCELLATION

1. This policy is cancelled effective        **11/03/2019 12:01 AM**       (at 12:01 AM Standard Time unless otherwise specified).

Return Premium:        **30,975**

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74 TRS 100541** |
| Named Insured | Countersigned by |
| **ONE WAY HAULING EXPRESS CO.** | |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy)

M-5271
(04/2007)

11/04/2019 18:30 82734E6C-2E87-444E-A54B-46F7BC6237D9

**Endorsement # 1**

M-2904 (11/80)

## GENERAL CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement changes the policy on the inception date of the policy or on the date shown below.
It is agreed that the policy is changed as follows:

**Vehicle Description has been modified.**

| Veh # | Year | Make | Model | VIN | Use | Year | Make | Model | VIN | Use |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Old | | | | | New | | |
| 4 | 2012 | FREIGHTLINER | TRACTOR | 1FUJGLB8CSBS6297 | C | 2012 | FREIGHTLINER | TACTOR | 1FUJGLBG8CSBS6297 | C |

Additional Premium    $_____

Pro-Rate Factor:    **1.000**

Return Premium    $ _____

All other terms, conditions and agreements remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74TRS100541** |
| | Endorsement Effective |
| | **05/05/2019 12:01 AM** |
| Named Insured | Countersigned at |
| **ONE WAY HAULING EXPRESS CO.** | by |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy)

**Endorsement # 1**

M-2904 (11/80)

## GENERAL CHANGE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement changes the policy on the inception date of the policy or on the date shown below.
It is agreed that the policy is changed as follows:

**Vehicle Description has been modified.**

| Veh # | Year | Make | Model | VIN | Use Old | Use New | Old Annual Premium Liab | UM | UIM | Med Pay | PIP | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 2012 | FREIGHTLINER | TACTOR | 1FUJGLBG8CSBS6297 | C | C | 17,947 | 211 | | | 577 | |

| Veh # | New Annual Premium Liab | UM | UIM | PIP | Med Pay | Other | Prorated Premium Liab | UM | UIM | PIP | Med Pay | Other | Subtotal by Vehicle |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 17,947 | 211 | | 577 | | | | | | | | | |
| | | | | | Subtotal | | | | | | | | |

Pro-Rate Factor:  **1.000**

Additional Premium  $_____

Return Premium  $ _____

All other terms, conditions and agreements remain unchanged.

| Company Name<br>**National Indemnity Company of the South** | Policy Number<br>**74TRS100541** |
|---|---|
| | Endorsement Effective<br>**05/05/2019 12:01 AM** |
| Named Insured<br>**ONE WAY HAULING EXPRESS CO.** | Countersigned at<br><br>by |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy)

05/20/2019 17:01 5F2048F5-9B04-49EA-B95F-DF83664C6871

**National Indemnity Company of the South**

A STOCK COMPANY

# COMMERCIAL POLICY

**Report  ALL  Accidents To:**

# 1-800-356-5750

**24 Hour**          **Toll Free**

---

**IMPORTANT NOTICE
TO AUTOMOBILE POLICYHOLDERS**

If any new or replacement drivers are hired during the term of this policy, notify the company immediately. Failure to do so may result in termination of your policy.

---

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE, COVERAGE FORM AND ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY. THIS POLICY IS A LEGAL CONTRACT BETWEEN THE POLICY OWNER AND THE COMPANY.

**READ YOUR POLICY CAREFULLY**

M-4600a (04/2003)

# COMMON POLICY CONDITIONS

**All Coverages included in this policy are subject to the following conditions:**

A. **CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 10 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date at 12:01 a.m. unless another time is stated on the cancellation notice.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. **CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. **INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the condition we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

E. **PREMIUMS**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

F. **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**

**(Broad Form)**

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom.

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishings by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material";

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

   "Nuclear facility" means:

      (a) Any "nuclear reactor";

      (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

      (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

   "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

   "Property damage" includes all forms of radioactive contamination of property.

| 74TRS088600 |
|---|
| RENEWAL NUMBER |

CROSS REFERENCE NUMBER

**74 TRS 100541**

# NATIONAL INDEMNITY COMPANY OF THE SOUTH
### NORTH LIBERTY, IOWA
## BUSINESS AUTO COVERAGE DECLARATIONS

☐ The Declarations include a second part designated **"Part 2"**.

**ITEM ONE** NAMED INSURED & ADDRESS
**ONE WAY HAULING EXPRESS CO.**
**8711 NW 108 STREET**
**HIALEAH GARDENS, FL 33018**

**Producer**
**A & L Insurance Carrier Inc**
**11117 W. Okeechobee Rd. Suite 201**
**Hialeah, FL 33018**

FORM OF NAMED INSURED'S BUSINESS:   **Corporation**

NAMED INSURED'S BUSINESS:   **TRUCKER**

POLICY PERIOD: Policy covers FROM     **05/05/2019 12:01 AM**     TO     **05/05/2020**     12:01 A.M. Standard Time at the Named Insured's Address stated above.

**ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage .

| COVERAGES | COVERED **AUTOS** (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT OF INSURANCE THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR **LOSS** | PREMIUM |
|---|---|---|---|
| LIABILITY | **7** | $            **1,000,000 CSL** | $ |
| PERSONAL INJURY PROTECTION (P.I.P.) (or equivalent No-fault coverage) | **7** | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS $            Deductible | $ |
| ADDED P.I.P. (or equivalent added No-fault cov.) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT | $ |
| PROPERTY PROTECTION INSURANCE (P.P.I.) (Michigan only) | | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $            Deductible FOR EACH ACCIDENT | $ |
| AUTO MEDICAL PAYMENTS | | $ | $ |
| UNINSURED MOTORISTS | **7** | $            **20,000 CSL (BI Only)** | $ |
| UNDERINSURED MOTORISTS (when not included in Uninsured Motorists coverage) | | $ | $ |
| **PHYSICAL DAMAGE INSURANCE** | | | |
| COMPREHENSIVE COVERAGE | | $ | $ |
| SPECIFIED CAUSES OF LOSS | | $ | $ |
| COLLISION COVERAGE | | $ | $ |
| TOWING AND LABOR | | $            Deductible FOR EACH COVERED **AUTO** | $ |

| FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY AT ITS INCEPTION | |
|---|---|
| **See M4572 (12/1994)** | PREMIUM FOR ENDORSEMENTS   $ |
| | ESTIMATED TOTAL PREMIUM   $ |

**ENTER SYMBOL 10 DESCRIPTION HERE:**

**POLICY SUBJECT TO A FULLY EARNED POLICYWRITING MINIMUM PREMIUM OF $** _____ **0** _____ **IF CANCELLED BY THE INSURED.**

**ITEM THREE - SCHEDULE OF COVERED AUTOS**     **AS ATTACHED**

Countersigned At     **Hull & Company, Inc.**
**St. Petersburg, FL**     _____ By _____

**In Witness whereof**, we have caused this policy to be executed and attested.

_____ Secretary

_____ President
AUTHORIZED SIGNATURE

M-5605 (02/2011)

## SCHEDULE OF FORMS AND ENDORSEMENTS AT POLICY INCEPTION

POLICY #          **74 TRS 100541**

INSURED          **ONE WAY HAULING EXPRESS CO.**

EFFECTIVE        **05/05/2019 12:01 AM**

| | | |
|---|---|---|
| M 4600a | 04/2003 | Commercial Policy Jacket |
| M 5605 | 02/2011 | Business Auto Coverage Declarations |
| M 4572 | 12/1994 | Schedule of Forms and Endorsements at Policy Inception |
| M 4959a | 03/2002 | Schedule of Covered Autos |
| M 5872 | 04/2016 | Changes to Common Policy Conditions - Cancellation |
| CA 2320 | 03/2010 | Truckers Endorsement |
| CA 0001 | 03/2010 | Business Auto Coverage Form |
| CA 2172 | 10/2009 | Florida Uninsured Motorists Coverage - Non-Stacked |
| CA 2210 | 01/2013 | Florida Personal Injury Protection |
| CA 0128 | 02/2016 | Florida Changes |
| M 5850 | 10/2015 | Loss Control Program |
| M 5535 | 10/2010 | Policyholders Notice - Florida |
| M 5905 | 06/2017 | Policyholder Notice - Contact Information |
| M 5906 | 06/2017 | Policyholder Notice Florida Payment of Settlement or Judgment |
| M 5381 | 01/2013 | Florida Changes - Cancellation and Nonrenewal |
| M 5748 | 01/2013 | Embargo and Sanction Notice |
| M 5751 | 03/2013 | Underinsured Motorists Coverage Amendatory Endorsement |
| M 3795 | 03/1987 | Punitive Damage Exclusion Duty to Defend Amendment |

**Form Version 041001**

**M-4572 (12/94)**

## SCHEDULE OF COVERED AUTOS

M-4959a (03/2002)

POLICY NUMBER:     **74 TRS 100541**                              EFFECTIVE DATE:     **05/05/2019 12:01 AM**

NAMED INSURED :     **ONE WAY HAULING EXPRESS CO.**

| Veh # | Year / Make / Model / VIN | Use (C,S or R) / Radius / Garaging Territory / Garaging City, State | GVW or Seating Capacity | Liab | UM/UIM | No-Fault | Med Pay | Addl Insd | In-Tow | Other | Limit Stated Amount or ACV | S | C | Spec Causes Comprehensive Premium / Deduct | Collision Premium / Deduct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | * Undescribed Trailer | Commercial Unlimited Territory 133 HIALEAH GARDENS, FL | 45,001 Lbs. | 1,795 | 21 | 58 | | | | | | | | | |
| 2 | * Undescribed Trailer | Commercial Unlimited Territory 133 HIALEAH GARDENS, FL | 45,001 Lbs. | 1,795 | 21 | 58 | | | | | | | | | |
| 3 | 2011 INTERNATIONAL TRACTOR 3HSCUAPR8BN358816 | Commercial Unlimited Territory 133 HIALEAH GARDENS, FL | 45,001 Lbs. | 17,947 | 211 | 577 | | | | | | | | | |
| 4 | 2012 FREIGHTLINER TRACTOR 1FUJGLB8CSBS6297 | Commercial Unlimited Territory 133 HIALEAH GARDENS, FL | 45,001 Lbs. | 17,947 | 211 | 577 | | | | | | | | | |
| 5 | * Undescribed Trailer | Commercial Unlimited Territory 133 HIALEAH GARDENS, FL | 45,001 Lbs. | 1,795 | 21 | 58 | | | | | | | | | |
| 6 | 2012 FREIGHTLINER TRACTOR 1FUJGLBG3CSBM1774 | Commercial Unlimited Territory 133 HIALEAH GARDENS, FL | 45,001 Lbs. | 17,947 | 211 | 577 | | | | | | | | | |
| | Premium for Endorsements | | | | | | | | | | | | | | |

* **Undescribed Trailer:  A non-owned, undescribed trailer while singularly attached to a scheduled power unit.**

M-4959a (03/2002)

**Policy Number**    **74 TRS 100541**

M-5872 (04/2016)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CHANGES TO COMMON POLICY CONDITIONS – CANCELLATION

The following are added to Paragraph **A.1. Cancellation** of the Common Policy Conditions:

    a.  However, if you granted a power of attorney to obtain financing for the policy, the finance company must provide a written notice of cancellation to us.  We will then cancel the policy as of the date:

        (1)  specified in the notice, or

        (2)  required under any applicable statute, regulation, or other policy provision,

    whichever is latest.

    b.  If we filed proof of insurance on your behalf to a government agency, the law may require advance notice of cancellation to that agency.  The date of cancellation will be extended as needed to comply.

All other terms, conditions and agreements remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74 TRS 100541** |
|  | Endorsement Effective |
|  | **05/05/2019 12:01 AM** |
| Named Insured | Countersigned at |
| **ONE WAY HAULING EXPRESS CO.** |  |
|  | By |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-5872 (04/2016)                                                                                        Page 1 of 1

05/02/2019

POLICY NUMBER:     **74 TRS 100541**

**COMMERCIAL AUTO**
**CA 23 20 03 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TRUCKERS ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** | **ONE WAY HAULING EXPRESS CO.** |
| **Endorsement Effective Date:** | **05/05/2019 12:01 AM** |

**SCHEDULE**

For those covered "autos" used in your operations as a "trucker", the liability "cost of hire" provisions in the Declarations are replaced by the following:

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums – Liability Coverage**

| Liability Coverage – Rating Basis, Cost Of Hire – Autos Used In Your Trucking Operations | | |
|---|---|---|
| **Estimated Cost Of Hire** | **Rate Per Each $100 Cost Of Hire** | **Total Estimated Premium** |
| $ | $ | $ |

"Cost of hire" means the total cost you incur for the hire of "autos" you don't own (not including "private passenger type autos" you borrow or rent from members of your household, your partners, "employees" or agents or members of their households).

**CA 23 20 03 10**

© Insurance Services Office, Inc., 2009

**Page 1 of 6**     ☐

The following provisions apply to those covered "autos" used in your operations as a "trucker" if gross receipts is used as a premium basis:

| Schedule For Gross Receipts Rating Basis – Liability Coverage | |
|---|---|
| **Estimated Yearly Gross Receipts:** | |
| **Rates (Per $100 Of Gross Receipts)** | |
| **Liability Coverage** | $ |
| **Auto Medical Payments** | $ |
| **Premiums** | |
| **Liability Coverage** | $ |
| **Auto Medical Payments** | $ |
| **Total Premiums** | $ |
| **Minimum Premiums** | $ |

When used as a premium basis:

Gross receipts means the total amount to which you are entitled for shipping or transporting property during the policy period regardless of whether you or any other carrier originates the shipment or transportation. Gross receipts includes the total amount received from renting equipment, with or without drivers, to anyone who is not a "trucker" and 15% of the total amount received from renting any equipment to any "trucker". Gross receipts does not include:

1. Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.
2. Advertising revenue.
3. Taxes which you collect as a separate item and remit directly to a governmental division.
4. C.O.D. collections for cost of mail or merchandise including collection fees.
5. Warehouse storage fees.

| Schedule Of Trailer Interchange Coverage | | |
|---|---|---|
| **Coverages** | **Limit Of Insurance And Deductible** | **Estimated Premium** |
| **Comprehensive** | Least Of Actual Cash Value, Cost Of Repair Or | $ |
| | $                    **Limit Of Insurance** | |
| | $                    **Deductible For Each Trailer** | |
| **Specified Causes Of Loss** | Least Of Actual Cash Value, Cost Of Repair Or | $ |
| | $                    **Limit Of Insurance** | |
| | $                    **Deductible For Each Trailer** | |
| **Collision** | Least Of Actual Cash Value, Cost Of Repair Or | $ |
| | $                    **Limit Of Insurance** | |
| | $                    **Deductible For Each Trailer** | |
| | **Total Premium** | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**Physical Damage Coverage**

The **Physical Damage Coverage** Exclusion in Paragraph **C.** of this endorsement is removed for each of the following coverages indicated by an "X" in the box.

☐ **Comprehensive**

☐ **Specified Causes Of Loss**

☐ **Collision**

For any operations you engage in as a "trucker", the policy is changed as follows:

**A. Who Is An Insured** under **Liability Coverage** is replaced by the following:

  **1. Who Is An Insured**

    **a.** You for any covered "auto".

    **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      **(1)** The owner or anyone else from whom you hire or borrow a covered "private passenger type auto".

      **(2)** Your "employee" or agent if the covered "auto" is a "private passenger type auto" and is owned by that "employee" or agent or a member of his or her household.

      **(3)** Someone using a covered "auto" while they are working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

      **(4)** Anyone other than your "employees", partners (if you are a partnership), or members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

      **(5)** A partner (if you are a partnership) or member (if you are a limited liability company) for a covered "private passenger type auto" owned by him or her or a member of his or her household.

    **c.** The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected:

      **(1)** Is being used exclusively in your business as a "trucker"; and

      **(2)** Is being used pursuant to operating rights granted to you by a public authority.

    **d.** The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

      **(1)** Is being used exclusively in your business as a "trucker"; and

      **(2)** Is being used pursuant to operating rights granted to you by a public authority.

    **e.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

**a.** Any "trucker", or his or her agents or "employees", other than you and your "employees":

    **(1)** If the "trucker" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

    **(2)** If the "trucker" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are being used exclusively in the "trucker's" business and pursuant to operating rights granted to the "trucker" by a public authority.

**b.** Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" occurs while the "trailer" is detached from a covered "auto" you are using and:

    **(1)** Is being transported by the carrier; or

    **(2)** Is being loaded on or unloaded from any unit of transportation by the carrier.

**B.** The following **Trailer Interchange Coverage** Provisions are added:

**1. Coverage**

**a.** We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment. The "trailer" must be in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailer" while in your possession.

**b.** We will pay for "loss" to the "trailer" under:

**(1) Comprehensive Coverage**

From any cause except:

**(a)** The "trailer's" collision with another object; or

**(b)** The "trailer's" overturn.

**(2) Specified Causes Of Loss Coverage**

Caused by:

**(a)** Fire, lightning or explosion;

**(b)** Theft;

**(c)** Windstorm, hail or earthquake;

**(d)** Flood;

**(e)** Mischief or vandalism; or

**(f)** The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

**(3) Collision Coverage**

Caused by:

**(a)** The "trailer's" collision with another object; or

**(b)** The "trailer's" overturn.

**c.** We have the right and duty to defend any "suit" asking for these damages. However, we have no duty to defend "suits" for "loss" not covered by this coverage form. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**d. Coverage Extensions**

The following applies as Supplementary Payments. We will pay for you:

**(1)** All expenses we incur.

**(2)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

**(3)** All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(4)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(5)** All interest on the full amount of any judgment that accrues after entry of the judgment, but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**2. Exclusions**

**a.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(1) Nuclear Hazard**

**(a)** The explosion of any weapon employing atomic fission or fusion; or

**(b)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**(2) War Or Military Action**

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**b.** We will not pay for loss of use.

**c. Other Exclusions**

We will not pay for "loss" due and confined to:

**(1)** Wear and tear, freezing, mechanical or electrical breakdown.

**(2)** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**3. Limit Of Insurance**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts:

**a.** The actual cash value of the damaged or stolen property at the time of the "loss".

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**c.** The Limit of Insurance shown in the Schedule.

**4. Deductible**

For each covered "trailer", our obligation to pay:

**a.** The actual cash value of the damaged or stolen property at the time of the "loss" will be reduced by the applicable deductible shown in the Schedule;

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality will be reduced by the applicable deductible shown in the Schedule; or

**c.** The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Schedule prior to the application of the Limit of Insurance shown in the Schedule.

**C. Physical Damage Coverage** is changed by adding the following exclusion:

We will not pay for "loss" to:

Any covered "auto" while in anyone else's possession under a written trailer interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

**D.** The **Other Insurance** Condition is replaced by the following:

**5. Other Insurance – Primary And Excess Insurance Provisions**

**a.** This coverage form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This coverage form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker". However, while a covered "auto" which is a "trailer" is connected to a power unit, this coverage form's Liability Coverage is:

**(1)** On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".

**(2)** Excess if the power unit is not a covered "auto".

**b.** Any Trailer Interchange Coverage provided by this coverage form is primary for any covered "auto".

**c.** Except as provided in Paragraphs **a.** and **b.** above, this coverage form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

**d.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**e.** Regardless of the provisions of Paragraphs **a., b.** and **c.** above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

**f.** When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

**E. Additional Definitions**

As used in this endorsement:

**1.** "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

**2.** "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

**3.** "Trucker" means any person or organization engaged in the business of transporting property by "auto" for hire.

Policy Number    74 TRS 100541

COMMERCIAL AUTO
CA 00 01 03 10

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

        © Insurance Services Office, Inc., 2009

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

### 2. Coverage Extensions

#### a. Supplementary Payments

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

#### b. Out-of-state Coverage Extensions

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

### B. Exclusions

This insurance does not apply to any of the following:

#### 1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

#### 2. Contractual

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

#### 3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

### 4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the coverage form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

### 5. Fellow Employee

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

### 6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

### 7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

### 8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

### 9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

### 10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

   (3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

   However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

**c.** An integral part of such equipment.

**3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this coverage form until:

**a.** There has been full compliance with all the terms of this coverage form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

© Insurance Services Office, Inc., 2009

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this coverage form.

### 2. Concealment, Misrepresentation Or Fraud

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This coverage form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this coverage form.

### 3. Liberalization

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

### 5. Other Insurance

**a.** For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

### 6. Premium Audit

**a.** The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this coverage form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if:

**(a)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(b)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada or in a settlement we agree to.

 © Insurance Services Office, Inc., 2009

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

    © Insurance Services Office, Inc., 2009

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

    **1.** A lease of premises;

    **2.** A sidetrack agreement;

    **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

    **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

    **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

    **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **a.** Power cranes, shovels, loaders, diggers or drills; or

        **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **5.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

        **b.** Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **a.** Equipment designed primarily for:

      **(1)** Snow removal;

      **(2)** Road maintenance, but not construction or resurfacing; or

      **(3)** Street cleaning;

   **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

   **1.** Damages because of "bodily injury" or "property damage"; or

   **2.** A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

   **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

© Insurance Services Office, Inc., 2009
CA 00 01 03 10    □

**Policy Number**  **74 TRS 100541**

M-5364 (11/2008)

# FLORIDA RENEWAL NOTICE
## UNINSURED MOTORIST COVERAGE OPTIONS

This notice provides a brief explanation of your Uninsured Motorist Coverage options.  This notice is for informational purposes only and does not become a part or condition of the attached policy.  If you have any questions regarding your coverage or wish to change your policy, please contact your agent.

1.      You may purchase Uninsured Motorist Coverage at limits equal to your Bodily Injury Liability limits.

2.      You may purchase Uninsured Motorist Coverage at limits less than your Bodily Injury Liability limits.

3.      You may reject Uninsured Motorist Coverage entirely.

4.      You may purchase Stacked or Non-Stacked Uninsured Motorist Coverage.  The premium for Stacked Uninsured Motorist Coverage may be higher than the premium for Non-Stacked Uninsured Motorist Coverage.

M-5364 (11/2008)

05/02/2019

POLICY NUMBER:    **74 TRS 100541**

**COMMERCIAL AUTO**
**CA 21 72 10 09**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA UNINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:**    ONE WAY HAULING EXPRESS CO. | |
| **Endorsement Effective Date:**    05/05/2019 12:01 AM | |

**SCHEDULE**

| | |
|---|---|
| **Limit Of Insurance: $**    See M 5605 (02/2011) | **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

    a. The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

    b. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

        (1) Have been given prompt written notice of such tentative settlement; and

        (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

    a. The Named Insured and any "family members".

    **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

    **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to:

**1.** Any claim settled or judgment reached without our consent, unless our right to recover payment has not been prejudiced by such settlement or judgment. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle".

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**4.** "Bodily injury" sustained by:

    **a.** An individual Named Insured while "occupying" or when struck by a vehicle owned by that individual Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form;

    **b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form;

    **c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other coverage form or policy; or

    **d.** Any "insured" with respect to damages for pain, suffering, mental anguish or inconvenience unless the "bodily injury" consists in whole or in part of:

        **(1)** Significant and permanent loss of an important bodily function;

        **(2)** Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

        **(3)** Significant and permanent scarring or disfigurement; or

        **(4)** Death.

**5.** Punitive or exemplary damages.

**6.** "Bodily injury" arising directly or indirectly out of:

    **a.** War, including undeclared or civil war;

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Liability Coverage form, No-fault Coverage endorsement, Medical Payments Coverage endorsement, or Uninsured Motorists Coverage endorsement attached to this Coverage Part.

**3.** We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

**4.** We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage Nonstacked as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   a. If there is other applicable insurance available under one or more coverage forms, policies or provisions of coverage, any recovery for damages sustained by an individual Named Insured or any "family member":

      (1) While "occupying" a vehicle owned by that Named Insured or any "family member" may equal, but not exceed, the limit of insurance for Uninsured Motorists Coverage applicable to that vehicle.

      (2) While "occupying" a vehicle not owned by that Named Insured or any "family member" may equal, but not exceed, the sum of:

         (a) The limit of insurance for Uninsured Motorists Coverage applicable to the vehicle such Named Insured or any "family member" was "occupying" at the time of the "accident"; and

         (b) The highest limit of insurance for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to such Named Insured or any "family member".

      (3) While not "occupying" any vehicle may equal, but not exceed, the highest limit of insurance for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to an individual Named Insured or any "family member".

   b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any collectible uninsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this coverage form is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

   c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing by certified or registered mail of a tentative settlement between the "insured" and the insurer of the vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle".

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   Our rights do not apply under this provision with respect to Uninsured Motorists Coverage if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle"; and

   b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

   If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

   b. We also have a right to recover the advanced payment.

**4.** The following condition is added:

  **a. Arbitration**

    **(1)** If we and an "insured" do not agree:

      **(a)** Whether that person is legally entitled to recover damages under this endorsement; or

      **(b)** As to the amount of damages that are recoverable by that person;

    Then the matter may be mediated, in accordance with the Mediation Provision contained in General Conditions, if the damages resulting from "bodily injury" are for $10,000 or less, or arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

    **(2)** Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

    **(3)** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

  **b. Florida Arbitration Act**

    If we and an "insured" agree to arbitration, the **Florida Arbitration Act** will not apply.

  **c. Mediation**

    **(1)** In any claim filed by an "insured" with us for:

      **(a)** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

      **(b)** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

      **(c)** "Loss" to a covered "auto" or its equipment, in any amount;

    either party may make a written demand for mediation of the claim prior to the institution of litigation.

    **(2)** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

    **(3)** The request must state:

      **(a)** Why mediation is being requested.

      **(b)** The issues in dispute, which are to be mediated.

    **(4)** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

    **(5)** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

    **(6)** The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

**F. Additional Definitions**

  As used in this endorsement:

  **1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

  **2.** "Occupying" means in, upon, getting in, on, out or off.

  **3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

    **a.** For which no liability bond or policy applies at the time of an "accident";

**b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which a "bodily injury" liability bond or policy applies at the time of an "accident" but the amount paid under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages caused by the "accident";

**c.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**d.** For which neither the driver nor owner can be identified. The land motor vehicle or "trailer" must:

    **(1)** Hit an individual Named Insured or any "family member", a covered "auto" or a vehicle such Named Insured or any "family member" is "occupying"; or

    **(2)** Cause an "accident" resulting in "bodily injury" to an individual Named Insured or any "family member" without hitting that Named Insured, any "family member", a covered "auto" or a vehicle such Named Insured or any "family member" is "occupying".

If there is no physical contact with the land motor vehicle or "trailer", the facts of the "accident" must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned by a governmental unit or agency;

**b.** Designed for use mainly off public roads while not on public roads; or

**c.** Owned by or furnished or available for the regular use of the Named Insured, or if the Named Insured is an individual, any "family member" unless it is a covered "auto" to which the coverage form's Liability Coverage applies and liability coverage is excluded for any person or organization other than the Named Insured, or if the Named Insured is an individual, any "family member".

POLICY NUMBER: **74 TRS 100541**

COMMERCIAL AUTO
CA 22 10 01 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** | **ONE WAY HAULING EXPRESS CO.** |
| **Endorsement Effective Date:** | **05/05/2019 12:01 AM** |

We agree with the "named insured", subject to all the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows that:

**SCHEDULE**

Any Personal Injury Protection deductible shown in the Declarations of $    **N/A**

is applicable to ☐ the following "named insured" only:

☐ each "named insured" and each dependent "family member".

☐ Work loss for "named insured" does not apply.

☐ Work loss for "named insured" and dependent "family member" does not apply.

| Benefits | Limit Per Person |
|---|---|
| Total Aggregate Limit for all Personal Injury Protection Benefits, except Death Benefits | $10,000 |
| Death Benefits | $5,000 |
| Medical Expenses | 80% of medical expenses subject to the total aggregate limit and the provisions of Paragraphs **D.2.a.** and **b.** under Limit Of Insurance. |
| Work Loss | 60% of work loss subject to the total aggregate limit |
| Replacement Services Expenses | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**CA 22 10 01 13**              © Insurance Services Office, Inc., 2013              **Page 1 of 8**

## A. Coverage

We will pay Personal Injury Protection benefits in accordance with the Florida Motor Vehicle No-fault Law to or for an "insured" who sustains "bodily injury" in an "accident" arising out of the ownership, maintenance or use of a "motor vehicle". Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of the following:

**1. Medical Expenses**

  **a.** All reasonable "medically necessary" expenses for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, including prosthetic devices. However, we will pay for these benefits only if the "insured" receives initial services and care within 14 days after the "motor vehicle" "accident" that are:

    **(1)** Lawfully provided, supervised, ordered or prescribed by a licensed physician, dentist or chiropractic physician;

    **(2)** Provided in a hospital or in a facility that owns, or is wholly owned by, a hospital; or

    **(3)** Provided by a person or entity licensed to provide emergency transportation and treatment;

    as authorized by the Florida Motor Vehicle No-fault Law.

  **b.** Upon referral by a licensed health care provider described in Paragraph **A.1.a.(1), (2)** or **(3)**, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to Paragraph **A.1.a.**, if provided, supervised, ordered or prescribed only by a licensed:

    **(1)** Physician, osteopathic physician, chiropractic physician or dentist; or

    **(2)** Physician assistant or advanced registered nurse practitioner, under the supervision of such physician, osteopathic physician chiropractic physician or dentist;

    as authorized by the Florida Motor Vehicle No-fault Law.

  Follow-up services and care may also be provided by:

    **(3)** A licensed hospital or ambulatory surgical center;

    **(4)** An entity wholly owned by one or more licensed physicians, osteopathic physicians, chiropractic physicians or dentists; or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

    **(5)** An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

    **(6)** A licensed physical therapist, based upon referral by a provider described in Paragraph **A.1.b;** or

    **(7)** A health care clinic licensed under the Florida Health Care Clinic Act:

      **(a)** Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities or the Accreditation Association for Ambulatory Health Care, Inc.; or

      **(b)** Which:

        **(i)** Has a licensed medical director;

        **(ii)** Has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

        **(iii)** Provides at least four of the following medical specialties:

          **i.** General medicine;

          **ii.** Radiography;

          **iii.** Orthopedic medicine;

          **iv.** Physical medicine;

          **v.** Physical therapy;

          **vi.** Physical rehabilitation;

          **vii.** Prescribing or dispensing outpatient prescription medication; or

          **viii.** Laboratory services;

    as authorized by the Florida Motor Vehicle No-fault Law.

However, with respect to Paragraph **A.1.**, medical expenses do not include massage or acupuncture, regardless of the person, entity or licensee providing the massage or acupuncture;

© Insurance Services Office, Inc., 2013

**2. Replacement Services Expenses**

With respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his or her household;

**3. Work Loss**

With respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person; and

**4. Death Benefits**

**B. Who Is An Insured**

**1.** The "named insured".

**2.** If the "named insured" is an individual, any "family member".

**3.** Any other person while "occupying" a covered "motor vehicle" with the "named insured's" consent.

**4.** A "pedestrian" if the "accident" involves the covered "motor vehicle".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

**1.** Sustained by the "named insured" or any "family member" while "occupying" any "motor vehicle" owned by the "named insured" that is not a covered "motor vehicle";

**2.** Sustained by any person while operating the covered "motor vehicle" without the "named insured's" expressed or implied consent;

**3.** Sustained by any person, if such person's conduct contributed to his or her "bodily injury" under any of the following circumstances:

   **a.** Causing "bodily injury" to himself or herself intentionally; or

   **b.** While committing a felony;

**4.** To the "named insured" or any "family member" for work loss if an entry in the Schedule or Declarations indicates that coverage for work loss does not apply;

**5.** To any "pedestrian", other than the "named insured" or any "family member", not a legal resident of the state of Florida;

**6.** To any person, other than the "named insured", if that person is the "owner" of a "motor vehicle" for which security is required under the Florida Motor Vehicle No-fault Law;

**7.** To any person, other than the "named insured", or any "family member", who is entitled to personal injury protection benefits from the owner of a "motor vehicle" that is not a covered "motor vehicle" under this insurance or from the "owner's" insurer; or

**8.** To any person who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

**D. Limit Of Insurance**

**1.** Regardless of the number of persons insured, policies or bonds applicable, premiums paid, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits, available under the Florida Motor Vehicle No-fault Law from all sources combined, including this policy, for or on behalf of any one person who sustains "bodily injury" as the result of any one "accident", shall be:

   **a.** $10,000 for medical expenses, work loss and replacement services; and

   **b.** $5,000 for death benefits.

**2.** Subject to Paragraph **D.1.a.**, we will pay:

   **a.** Up to $10,000 for medical expenses, if a licensed physician, dentist, physician assistant or an advanced registered nurse practitioner authorized by the Florida Motor Vehicle No-fault Law has determined that the "insured" had an "emergency medical condition"; or

   **b.** Up to $2,500 for medical expenses, if any health care provider described in Paragraph **A.1.a.** or **A.1.b.** has determined that the "insured" did not have an "emergency medical condition".

**3.** Any amount paid under this coverage will be reduced by the amount of benefits an injured person has been paid or is entitled to be paid for the same elements of "loss" under any workers' compensation law.

4. If personal injury protection benefits, under the Florida Motor Vehicle No-fault Law, have been received from any insurer for the same elements of loss and expense benefits available under this policy, we will not make duplicate payments to or for the benefit of the injured person. The insurer paying the benefits shall be entitled to recover from us its pro rata share of the benefits paid and expenses incurred in handling the claim.

5. The deductible amount shown in the Schedule will be deducted from the total amount of expenses and losses listed in Paragraphs **A.1.**, **A.2.** and **A.3.** of this endorsement before the application of any percentage limitation for each "insured" to whom the deductible applies. The deductible does not apply to the death benefit.

6. Any amount paid under this coverage for medical expenses may be limited by the medical fee schedule prescribed by the Florida Motor Vehicle No-fault Law.

**E. Changes In Conditions**

The **Conditions** are changed for **Personal Injury Protection** as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:
   Compliance with the following duties is a condition precedent to receiving benefits:
   In the event of an "accident", the "named insured" must give us or our authorized representative prompt written notice of the "accident".
   If any injured person or his or her legal representative institutes a legal action to recover damages for "bodily injury" against a third party, a copy of the summons, complaint or other process served in connection with that legal action must be forwarded to us as soon as possible by the injured person or his or her legal representative.
   A person seeking personal injury protection benefits must, as soon as possible, give us written proof of claim, under oath if required, containing full particulars concerning the injuries and treatment received and/or contemplated, and send us any other information that will assist us in determining the amount due and payable.

A person seeking personal injury protection benefits must submit to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.

2. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   **a.** No legal action may be brought against us until there has been full compliance with all terms of this policy. In addition, no legal action may be brought against us:

   **(1)** Until the claim for benefits is overdue in accordance with Paragraph **F.2.** of this endorsement; and

   **(2)** Until we are provided with a demand letter in accordance with the Florida Motor Vehicle No-fault Law sent to us via U.S. certified or registered mail; and

   **(3)** With respect to the overdue claim specified in the demand letter, if, within 30 days of receipt of the demand letter, we:

   **(a)** Pay the overdue claim; or

   **(b)** Agree to pay for future treatment not yet rendered;

   in accordance with the requirements of the Florida Motor Vehicle No-fault Law.

   **b.** If legal action is brought against us, all claims related to the same health care provider or facility shall be brought in a single action, unless good cause can be shown why such claims should be brought separately.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   Unless prohibited by the Florida Motor Vehicle No-fault Law, in the event of payment to or for the benefit of any injured person under this coverage:

   **a.** We will be reimbursed for those payments, not including reasonable attorneys' fees and other reasonable expenses, from the proceeds of any settlement or judgment resulting from any right of recovery of the injured person against any person or organization legally responsible for the "bodily injury" from which the payment arises. We will also have a lien on those proceeds.

   **b.** If any person to or for whom we pay benefits has rights to recover benefits from another, those rights are transferred to us. That person must do everything necessary to secure our rights and must do nothing after loss to impair them.

   **c.** The insurer providing personal injury protection benefits on a private passenger "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the "owner" or the insurer of the "owner" of a commercial "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, if such injured person sustained the injury while "occupying", or while a "pedestrian" through being struck by, such commercial "motor vehicle". However, such insurer's right of reimbursement under this Paragraph **c.** does not apply to an "owner" or registrant of a "motor vehicle" used as a taxicab.

4. **Concealment, Misrepresentation Or Fraud** is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   We do not provide coverage under this endorsement for an "insured" if that "insured" has committed, by a material act or omission, insurance fraud relating to personal injury protection coverage under this form, if fraud is admitted to in a sworn statement by the "insured" or if the fraud is established in a court of competent jurisdiction. Any insurance fraud voids all personal injury protection coverage arising from the claim with respect to the "insured" who committed the fraud. Any benefits paid prior to the discovery of the fraud are recoverable from that "insured".

5. **Policy Period, Coverage Territory** is replaced by the following:

   **Policy Period, Coverage Territory**

   The insurance under this section applies only to "accidents" which occur during the policy period:

   **a.** In the state of Florida;

   **b.** As respects the "named insured" or any "family member", while "occupying" the covered "motor vehicle" outside the state of Florida but within the United States of America, its territories or possessions or Canada; and

   **c.** As respects the "named insured", while "occupying" a "motor vehicle" of which a "family member" is the "owner" and for which security is maintained under the Florida Motor Vehicle No-fault Law outside the state of Florida but within the United States of America, its territories or possessions or Canada.

**F. Additional Conditions**

The following conditions are added:

**1. Mediation**

**a.** In any claim filed by an "insured" with us for:

**(1)** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

**(2)** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

**(3)** "Loss" to a covered "auto" or its equipment, in any amount, either party may make a written demand for mediation of the claim prior to the institution of litigation.

**b.** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**c.** The request must state:

**(1)** Why mediation is being requested.

**(2)** The issues in dispute, which are to be mediated.

**d.** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

**e.** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

**f.** The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

**2. Payment Of Benefits**

Personal injury protection benefits payable under this Coverage Form, whether the full or partial amount, may be overdue if not paid within 30 days after we are furnished with written notice of the covered loss and the amount of the covered loss in accordance with the Florida Motor Vehicle No-fault Law. However, if we have a reasonable belief that a fraudulent insurance act has been committed relating to personal injury protection coverage under this Coverage Form, we will notify the "insured" in writing, within 30 days after the submission of the claim, that the claim is being investigated for suspected fraud. No later than 90 days after the submission of the claim, we will either deny or pay the claim, in accordance with the Florida Motor Vehicle No-fault Law.

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

**3. Modification Of Policy Coverages**

Any Automobile Medical Payments Coverage and any Uninsured Motorists Coverage afforded by the policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits has been exhausted, any Medical Payments Coverage afforded by the policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expense benefits but shall not be payable for the amount of the deductible selected.

© Insurance Services Office, Inc., 2013

CA 22 10 01 13

4. **Medical Reports And Examinations; Payment Of Claim Withheld**

As soon as practicable, the person making the claim shall submit to mental and physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to, or fails to appear at, an examination, we will not be liable for subsequent personal injury protection benefits. Such person's refusal to submit to, or failure to appear at, two examinations, raises a rebuttable presumption that such person's refusal or failure was unreasonable.

Whenever a person making a claim as a result of an injury sustained while committing a felony is charged with committing that felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

5. **Provisional Premium**

In the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-fault Law providing for the exemption of persons from tort liability, the premium stated in the Declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the "named insured" pursuant to the Florida Motor Vehicle No-fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium shown in the Declarations, the "named insured" shall pay to us the excess as well as the amount of any return premium previously credited or refunded.

6. **Special Provisions For Rented Or Leased Vehicles**

Notwithstanding any provision of this coverage to the contrary, if a person is injured while "occupying", or through being struck by, a "motor vehicle" rented or leased under a rental or lease agreement which does not specify otherwise in language required by FLA. STAT. SECTION 627.7263(2) in at least 10-point type on the face of the agreement, the personal injury protection benefits available under the Florida Motor Vehicle No-fault Law and afforded under the lessor's policy shall be primary.

7. **Insured's Right To Personal Injury Protection Information**

   **a.** In a dispute between us and an "insured", or between us and an assignee of the "insured's" personal injury protection benefits, we will, upon request, notify such "insured" or assignee that the limits for Personal Injury Protection have been reached. We will provide such information within 15 days after the limits for Personal Injury Protection have been reached.

   **b.** If legal action is commenced, we will, upon request, provide an "insured" with a copy of a log of personal injury protection benefits paid by us on behalf of the "insured". We will provide such information within 30 days of receipt of the request for the log from the "insured".

**G. Additional Definitions**

As used in this endorsement:

1. "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

   a. Serious jeopardy to "insured's" health;

   b. Serious impairment to bodily functions; or

   c. Serious dysfunction of any bodily organ part.

2. "Motor vehicle" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semitrailer designed for use with such vehicle.

   However, "motor vehicle" does not include:

   a. A mobile home;

   b. Any "motor vehicle" which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority or a political subdivision of the state.

3. "Family member" means a person related to the "named insured" by blood, marriage or adoption, including a ward or foster child, who is a resident of the same household as the "named insured".

4. "Named insured" means the person or organization named in the Declarations of the policy and, if an individual, shall include the spouse if a resident of the same household.

5. "Occupying" means in or upon or entering into or alighting from.

6. "Owner" means a person or organization who holds the legal title to a "motor vehicle" and also includes:

   a. A debtor having the right to possession, in the event a "motor vehicle" is the subject of a security agreement;

   b. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

   c. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease without option to purchase, and such lease is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

7. "Pedestrian" means a person while not an occupant of any self-propelled vehicle.

8. "Medically necessary" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

   a. In accordance with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site and duration; and

   c. Not primarily for the convenience of the patient, physician or other health care provider.

          © Insurance Services Office, Inc., 2013          CA 22 10 01 13

M-5698 (01/2013)

# FLORIDA PIP NOTIFICATION

## Use of Medical Fee Schedule for Personal Injury Protection Claims

We will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, and may further limit payment to no more than 80 percent of the following schedule of maximum charges:

a. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002(9), Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

    I. The participating physicians fee schedule of Medicare Part B, except as provided in paragraphs II. and III.

    II. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

    III. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this Paragraph f., we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

05/02/2019

Policy Number  **74 TRS 100541**

COMMERCIAL AUTO
CA 01 28 02 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Liability Coverage** is changed as follows:

Paragraph **(5)** of **a. Supplementary Payments** under **Coverage Extensions** in the Business Auto, Garage, Truckers and Motor Carrier Coverage Forms is replaced by the following:

> We will pay for the "insured":
>
> **(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**B. Physical Damage Coverage** is changed as follows:

**1.** No deductible applies under Specified Causes Of Loss or Comprehensive Coverage for "loss" to glass used in the windshield.

**2.** All other **Physical Damage Coverage** provisions will apply.

**C.** Paragraph **1.** of **Loss Conditions, Appraisal For Physical Damage Loss,** is replaced by the following:

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in this endorsement. The mediation must be completed before a demand for appraisal can be made. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

05/02/2019

CA 01 28 02 16          © Insurance Services Office, Inc., 2015          Page 1 of 2

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**D.** The **General Conditions** are amended as follows:

1. The following is added to the **Other Insurance** Condition in the Business Auto and Garage Coverage Forms, and **Other Insurance – Primary And Excess Provisions** Condition in the Truckers and Motor Carrier Coverage Forms:

   **a.** When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" and:

   **(1)** One provides coverage to a lessor of "autos" for rent or lease; and

   **(2)** The other provides coverage to a person not described in Paragraph **D.1.a.(1);**

   then the Coverage Form or policy issued to the lessor described in Paragraph **D.1.a.(1)** is excess over any insurance available to a person described in **D.1.a.(2)** if the face of the lease or rental agreement contains, in at least 10 point type, the following language:

   > The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by FLA. STAT. SECTION 324.021(7) and FLA. STAT. SECTION 627.736.

2. The following condition is added to the Business Auto, Garage, Truckers and Motor Carrier Coverage Forms:

   **Mediation**

   1. In any claim filed by an "insured" with us for:

      **a.** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

   **b.** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

   **c.** "Loss" to a covered "auto" or its equipment, in any amount;

   either party may make a written demand for mediation of the claim prior to the institution of litigation.

   2. A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

   3. The request must state:

      **a.** Why mediation is being requested.

      **b.** The issues in dispute, which are to be mediated.

   4. The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

   5. Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

   6. The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

 © Insurance Services Office, Inc., 2015

M-5850 (10/2015)

# LOSS CONTROL PROGRAM

In accordance with Florida Law, we have developed for your use a Risk Management Program. This Program provides you with guidelines for establishing a safety program. Additional personalized loss control services are also available from us or our contractor at your expense. If you wish to receive a free copy of our Risk Management Program or learn about other Loss Control services we offer, please write to:

National Indemnity Company of the South
Attn: Loss Control Department
1314 Douglas Street, Suite 1400
Omaha, NE 68102-1944

M-5850 (10/2015)

**Policy Number**  **74 TRS 100541**

M-5535 (10/2010)

# POLICYHOLDERS NOTICE – FLORIDA

As required by Florida Statute 324.0221(1)(b), if this policy is cancelled or nonrenewed either by you or us, this information will be reported by us to the Department of Highway Safety and Motor Vehicles.

Also, failure by you to maintain personal injury protection and property damage liability insurance on a motor vehicle when required by law may result in the loss of registration and driving privileges in this state. Florida Statute 324.0221(3) advises any operator or owner whose driver's license or registration has been suspended for failing to maintain personal injury protection and property damage liability insurance may effect reinstatement upon compliance by making payment to the Department of Highway Safety and Motor Vehicles of a nonrefundable reinstatement fee of $150 for the first reinstatement, $250 for the second reinstatement and $500 for each subsequent reinstatement during the three years following the first reinstatement.

M-5535 (10/2010)

05/02/2019

M-5905 (06/2017)

# POLICYHOLDER NOTICE — CONTACT INFORMATION

For inquiries about your policy, to obtain information about coverage, or to obtain assistance with resolving a complaint, please contact us at        **866-720-7861**

**Policy Number   74 TRS 100541**

M-5906 (06/2017)

# POLICYHOLDER NOTICE

# FLORIDA PAYMENT OF SETTLEMENT OR JUDGMENT

1.  Pursuant to Florida Statute 627.4265, if we have agreed in writing to the settlement of a claim, we will tender payment according to the terms of the agreement no later than 20 days after such settlement is reached.  The tender of payment may be conditioned upon the execution of a release mutually agreeable to the parties, but if the payment is not tendered within 20 days, or such other date as the agreement may provide, it shall bear interest as set forth in Section 627.4265 from the date of the agreement; however, if the tender of payment is conditioned upon the execution of a release, the interest shall not begin to accrue until the executed release is tendered to us.

2.  Pursuant to Florida Statute 627.427, if a judgment or decree for the recovery of money is entered against us in any court of the state of Florida, we will satisfy the judgment within 60 days from and after the entry date thereof, or in the case of an appeal from such judgment or decree, within 60 days from and after the affirmance of such judgment by the appellate court.

Policy Number  74 TRS 100541

M-5381 (01/2013)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

**A.** Paragraph **A.2.** of the Common Policy Conditions, **Cancellation,** is changed to read as follows:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

However, if your financial institution does not honor your initial premium payment for any reason then your policy is void from inception unless the nonpayment is cured within the earlier of 15 days after we send notice of cancellation by certified mail or 5 days after you receive the notice.

The notice of cancellation will state the reason(s) for the cancellation.

**B.** Paragraph **A.5.** of the Common Policy Conditions, **Cancellation,** is replaced by the following:

**5.** If this policy is canceled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata. If the return premium is not refunded with the notice of cancellation, we will mail the refund within 15 days after the effective date of cancellation, unless this is an audit policy.
**b.** If the first Named Insured cancels, the refund may be less than pro rata. We will mail the refund within 30 days after the effective date of cancellation or receipt of notice or request for cancellation, whichever is later, unless this is an audit policy.
**c.** If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

**C.** The following is added to Paragraph **A.** of the Common Policy Conditions, **Cancellation:**

**7.** If this policy provides Personal Injury Protection, Property Damage Liability Coverage or both and:

**a.** It is a new or renewal policy, it may not be canceled by the Named Insured during the first 60 days immediately following the effective date of the policy or renewal, except for one of the following reasons:

**(1)** The covered "auto" is completely destroyed such that it is no longer operable;
**(2)** Ownership of the covered "auto" is transferred; or
**(3)** Another policy or binder covering the motor vehicle insured under this policy has been purchased.

**b.** It is a new policy, we may not cancel for nonpayment of premium during the first 60 days immediately following the effective date of the policy unless the reason for the cancellation is the issuance of a check for the premium that is dishonored for any reason or any other type of premium payment that was subsequently determined to be rejected or invalid.

M-5381 (01/2013)

8.  If we have issued a certificate of insurance on your behalf to the Florida Department of Highway Safety & Motor Vehicles pursuant to Florida Statute § 320.02(5)(e) and this policy is canceled, we will provide notice of the cancellation to the Florida Department of Highway Safety & Motor Vehicles in accordance with Florida law.

**D.**  The following Condition is added:

**Nonrenewal**
1.  If we decide not to renew or continue this policy, we will mail you notice at least 45 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.
2.  If we fail to mail proper notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.
3.  Notice of nonrenewal will state the reason(s) for the nonrenewal and the effective date of nonrenewal. The policy period will end on that date.

All other terms, conditions and agreements remain unchanged.

| | |
|---|---|
| Company Name<br>**National Indemnity Company of the South** | Policy Number      **74 TRS 100541** |
| | Endorsement Effective      **05/05/2019 12:01 AM** |
| Named Insured<br>**ONE WAY HAULING EXPRESS CO.** | Countersigned at<br><br>By |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-5748 (01/2013)

**Policy Number**   **74 TRS 100541**

# EMBARGO AND SANCTION NOTICE

No payments will be made under the terms of this insurance contract to the extent that applicable trade or economic sanctions or other laws or regulations prohibit us from providing insurance or making such payments.

All other terms, conditions and agreements of the policy remain unchanged.

| Company Name<br>**National Indemnity Company of the South** | Policy Number<br>**74 TRS 100541** |
| --- | --- |
| | Endorsement Effective<br>**05/05/2019 12:01 AM** |
| Named Insured<br>**ONE WAY HAULING EXPRESS CO.** | Countersigned by |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-5748 (01/2013)

05/02/2019

Policy Number   **74 TRS 100541**

M-5751 (03/2013)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNDERINSURED MOTORISTS COVERAGE
# AMENDATORY ENDORSEMENT

The following is added to the definition of "underinsured motor vehicle":

An "underinsured motor vehicle" does not include any vehicle which is a covered "auto" under the Liability Coverage section of this policy, regardless of any exclusions that may apply.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.  All other terms, conditions and agreements of the policy shall remain unchanged.

| Company Name | Policy Number | |
|---|---|---|
| **National Indemnity Company of the South** | | **74 TRS 100541** |
| | Endorsement Effective | |
| | | **05/05/2019 12:01 AM** |
| Named Insured | Countersigned at | |
| **ONE WAY HAULING EXPRESS CO.** | | |
| | By | |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-5751 (03/2013)       Includes copyrighted material of Insurance Services Office, Inc., with its permission       Page 1 of 1

05/02/2019

Policy Number    74 TRS 100541

M-3795 (3/87)

# PUNITIVE DAMAGE EXCLUSION
# DUTY TO DEFEND AMENDMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies the insurance provided under all coverage forms and is effective on the inception date of the policy or on the date shown below.

The insuring agreement is amended to provide that this insurance does not apply to any sums awarded as punitive damages.

The Company has the right and duty to defend any suit asking for damages covered by this policy. However, the Company has no duty to defend suits for bodily injury or property damage not covered by this policy. The Company has the right to defend any suit against the insured which seeks both punitive damages and damages covered in the insuring agreement. However, the Company has no duty to defend any suit seeking only punitive damages or where the remaining allegations of a complaint seek only punitive damages, and the Company shall have the right to settle that part or parts of a suit seeking damages other than punitive.

In the event of a conflict of interest between the insured and the Company due to allegations of punitive damage or due to other allegations not covered by the insuring agreement, the Company shall not be obligated to retain separate counsel to represent the interests of the insured with respect to defense of non-covered allegations, but the insured shall have the right to retain separate counsel at the insured's expense to serve as co-counsel. The Company shall not be required to relinquish control of the defense to such co-counsel so long as covered allegations remain in the suit.

All other terms, conditions and agreements of the policy shall remain unchanged.

| Company Name | Policy Number | |
|---|---|---|
| **National Indemnity Company of the South** | | **74 TRS 100541** |
| | Endorsement Effective | |
| | | **05/05/2019 12:01 AM** |
| Named Insured | Countersigned by | |
| **ONE WAY HAULING EXPRESS CO.** | | |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-3795 (3/87)

05/02/2019