```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      GAINESVILLE DIVISION
 3                CASE NO.:   2:23-cv-140-RWS
 4
    FREDDIE CAGLE,
 5
          Plaintiff,
 6
     -vs-
 7
    NATIONAL INDEMNITY
 8  COMPANY OF THE SOUTH and
    OLD REPUBLIC INSURANCE
 9  COMPANY,
10        Defendants.
     _____/
11
12        DEPOSITION OF:   ISABEL CORDERO
13        DATE:            Thursday, June 6, 2024
14        TIME:            10:00 a.m. - 12:24 p.m.
15
          PLACE:           DIEGUEZ & ASSOCIATES, PLLC
16                         7950 NW 155 Street
                           Suite 207
17                         Miami Lakes, Florida 33016
18
19
          STENOGRAPHICALLY
20        REPORTED BY:     VANESSA OBAS, RPR
21
22
23
24
25
```

Case 2:23-cv-00140-RWS   Document 90-4   Filed 07/17/24   Page 2 of 12
Isabel Cordero                                          June 6, 2024
Cagle, Freddie v. National Indemnity Company of the South

Page 9

```
 1              Are you aware of that?
 2      A.      Yes.
 3      Q.      Are you aware of -- or strike that.
 4              Do you have any knowledge of the motor vehicle
 5   accident that gave rise to that judgment?
 6      A.      Yes.  I know through who was my husband, who
 7   was involved, and myself.
 8      Q.      Okay.  Who was your husband at the time?
 9      A.      Ariel Calzada Torres.
10      Q.      Are you-all still married?
11      A.      No.
12      Q.      When were you-all divorced?
13      A.      It's been around three years.
14      Q.      What is your current address?
15      A.      16213 Northwest 84th Place, Miami Lakes 33016.
16      Q.      And who do you live at that address with?
17      A.      With my son, Yadiel Calzada Cordero.
18      Q.      Are you currently employed?
19      A.      No.  Housewife.
20      Q.      Have you ever worked for One Way Hauling?
21      A.      No.  My husband was the one who had me on the
22   documents.
23      Q.      Do you have any understanding as to your
24   position with the company?
25      A.      No.
```

Case 2:23-cv-00140-RWS   Document 90-4   Filed 07/17/24   Page 3 of 12
Isabel Cordero                                        June 6, 2024
Cagle, Freddie v. National Indemnity Company of the South

Page 12

1    A.   Yes.  I -- I think so.  My son is the one who
2    knows.
3    Q.   How many employees does One Way Hauling have
4    currently?
5    A.   I don't know.  I do not know that information.
6    Q.   What is the business of One Way?
7    A.   Transportation.
8    Q.   Does One Way own any tractors or trailers?
9    A.   I don't know.
10   Q.   Would your son be the best person to answer
11   that question?
12   A.   Correct.
13   Q.   Do you know whether One Way Hauling is ever
14   engaged in brokering of loads?
15   A.   I do not know.
16   Q.   Do you know how Mr. Loyola came to be driving
17   the tractor that was involved in this accident?
18   A.   I don't know that.  But Ariel Calzada, the
19   person who was my husband, would be the one who knows.
20   Q.   In July of 2019, the accident that we're here
21   about occurred.
22        At that time, was your son the dispatcher for
23   One Way Hauling?
24   A.   No.  No.
25   Q.   At that time was your son a dispatcher for any

Case 2:23-cv-00140-RWS   Document 90-4   Filed 07/17/24   Page 4 of 12
Isabel Cordero                                            June 6, 2024
Cagle, Freddie v. National Indemnity Company of the South

Page 13

1    other company?
2       A.   No.
3       Q.   What was your son doing at that time for
4    employment?
5       A.   He was studying, and he would help his dad in
6    other things at that time.  But there was another
7    dispatcher.
8       Q.   Do you recall the dispatcher's name?
9       A.   No.
10      Q.   Do you know what company the individual
11   dispatched for?
12      A.   I do not know.
13      Q.   Do you know whether First Time had a dispatcher
14   in July of 2019?
15      A.   I do not know.
16      Q.   It's my understanding that Mr. Loyola was
17   driving the tractor with a co-driver.
18           Do you know who the co-driver was with
19   Mr. Loyola?
20      A.   I'm not aware.
21      Q.   Do you know where the load was going that
22   Mr. Loyola was -- was trailering?
23      A.   I do not know.
24      Q.   Do you know whether there are any documents
25   that would relate to Mr. Loyola's trip on the day of

Case 2:23-cv-00140-RWS   Document 90-4   Filed 07/17/24   Page 5 of 12
Isabel Cordero                                           June 6, 2024
Cagle, Freddie v. National Indemnity Company of the South

Page 14

1    this accident, and if so, where would they be?
2         A.   The person who was my husband, Ariel Calzada,
3    would know about that.
4              (Telephone interruption.)
5              THE WITNESS:  Oh, I'm sorry.
6              MR. BRANTLEY:  It's okay.
7              MR. ELLIS:  No problem.
8              MR. DIEGUEZ:  No problem.
9              THE WITNESS:  I thought I had muted it.
10             MR. DIEGUEZ:  She thought it was on mute.
11             THE WITNESS:  I am sorry.
12   BY MR. BRANTLEY:
13        Q.   Do you recognize the name First Time?
14        A.   No.
15        Q.   Same question.  Do you recognize the name
16   King's Way?
17        A.   No.
18        Q.   Are you aware of any companies, other than One
19   Way, that your ex-husband was involved with?
20        A.   I'm not aware.
21        Q.   So just to be clear, the only company that you
22   can remember that your husband was involved with is One
23   Way Hauling?
24        A.   Correct.
25        Q.   In 2019, do you know how many tractors One Way

Case 2:23-cv-00140-RWS   Document 90-4   Filed 07/17/24   Page 6 of 12
Isabel Cordero                                             June 6, 2024
Cagle, Freddie v. National Indemnity Company of the South

Page 15

1  Hauling owned, if any?
2       A.   I'm not aware.
3       Q.   In 2019, do you know how One Way Hauling
4  obtained loads to be delivered?
5       A.   I'm not aware of that.  The person who knows
6  about all that is Ariel Calzada, the person who was my
7  husband.
8       Q.   Are you aware of where your ex-husband kept the
9  paperwork that would relate to One Way Hauling and its
10 activities in 2019?
11      A.   No.
12      Q.   We have some tax returns here today, and they
13 identify Fernando R. Palenzuela as the preparer of the
14 tax returns.
15      A.   Correct.
16      Q.   Okay.  Are you familiar with that individual?
17      A.   Yes.  He does the taxes.
18      Q.   And was he the individual who would typically
19 do all of your ex-husband's taxes?
20      A.   Correct.
21      Q.   Are you aware of any other individual or
22 company who would prepare taxes on behalf of your
23 ex-husband or any of the business entities he was
24 involved with?
25      A.   I'm not aware.

Case 2:23-cv-00140-RWS   Document 90-4   Filed 07/17/24   Page 7 of 12
Isabel Cordero                                              June 6, 2024
Cagle, Freddie v. National Indemnity Company of the South

Page 28

1      can go.
2              MR. ELLIS:  All right, brother.  I'll go next.
3              MR. BARBER:  Okay.
4                      CROSS-EXAMINATION
5      BY MR. ELLIS:
6         Q.   How would you like me to address you?
7         A.   Isabel.
8         Q.   Ms. Isabel, you didn't know you were going to
9      be Vanna White today from "Wheel of Fortune."  Your
10     nails looked good.  That's why I was saying that.
11        A.   Thank you all.  No problem.
12        Q.   One Way Hauling was formed in 2014; is that
13     right?
14        A.   Correct.
15        Q.   It's been in the transportation business every
16     year since then?
17        A.   Yes.  Yes.
18        Q.   Meaning One Way would hire itself out to other
19     companies to move property?
20        A.   I'm not aware of that.
21        Q.   Okay.  So when you say "transportation," tell
22     me what you mean by "transportation."
23        A.   Regarding cargo that gets transported.
24        Q.   So my -- so is it your understanding that
25     somebody would hire One Way to move cargo?

1       A.    Yes, Mr. Ariel Calzada Torres, my ex-husband.
2       Q.    Okay.  And that is your understanding of what
3   One Way did from 2014 until today?
4       A.    Yes.
5             (Defendants' Exhibit Number 10, Check, was
6       marked for Identification.)
7             MR. ELLIS:  Let's mark this.
8             This is Danny, and I brought copies.
9             MR. BRANTLEY:  What number are we on, 10?
10            MR. ELLIS:  10.  All right.  I'll let you do
11      the work.
12            Don't cover the 2 on this one.
13  BY MR. ELLIS:
14      Q.    Ms. Isabel, I am handing you a document that
15  was from Mr. Loyola's deposition.  We're going to make
16  it --
17            MR. ELLIS:  Do you want to interpret that,
18      Miss?
19            THE INTERPRETER:  Yes.
20  BY MR. ELLIS:
21      Q.    Can you tell me whose signature that is on the
22  check?
23      A.    From Ariel Calzada Torres.
24      Q.    Thank you.
25            I want to show you a picture that was in

1       A.   No.
2       Q.   The reason I ask, in 2021, you, on behalf of
3   One Way, signed a federal form giving information to the
4   federal government about the miles, trucks, drivers for
5   One Way.  It was an electronic signature.
6       A.   Oh, no, no.  The person in charge was my
7   ex-husband, Ariel Calzada Torres.
8       Q.   There's two other gentlemen -- or two other
9   name- -- the two other gentlemen that were on there that
10  I just --
11           Let me start again, Ms. Translator.
12           The two other gentlemen that I asked you about
13  were also on previous forms.
14      A.   Yes.  Ariel Calzada, he was the one in charge
15  of that.  I'm not aware.
16      Q.   Did Ariel have lots of different companies --
17  trucking companies?
18      A.   I'm not aware.
19      Q.   Were you aware that Ariel listed you as the
20  president of One Way Hauling?
21      A.   Yes, because he was my husband at that time,
22  and he put me there.
23      Q.   Do you know a gentleman named Osiel, O-S-I-E-L,
24  Tellez, T-E-L-L-E-Z?
25      A.   No, I don't recall.

Case 2:23-cv-00140-RWS   Document 90-4   Filed 07/17/24   Page 10 of 12
Isabel Cordero                                                  June 6, 2024
Cagle, Freddie v. National Indemnity Company of the South

Page 34

1    A.   Yes.
2    Q.   What work did you do for One Way Hauling to
3    earn $40,000?
4         MR. DIEGUEZ:  What year was that?
5         MR. ELLIS:  40,000.
6         MR. DIEGUEZ:  2019.
7         MR. ELLIS:  In 2019.
8         THE WITNESS:  I would help my son in
9    everything, and him also because I was married at
10   that time.
11   BY MR. ELLIS:
12   Q.   It's a family business.  Everybody has to pitch
13   in.
14   A.   Of course.
15   Q.   I was going to make a joke, but never mind.
16        MR. DIEGUEZ:  At your own risk.
17        MR. ELLIS: Yeah.  Exactly.  I thought I would
18   stay away from that.
19   BY MR. ELLIS:
20   Q.   Again, I know you probably don't know.  But at
21   the very top is a 1099 for Mr. Loyola.
22        Do you see that?
23   A.   I'm not aware.  All this -- the person who knew
24   about this was my ex-husband, Ariel Calzada Torres.
25   Q.   So in 2019, Mr. Loyola received money for One

1    Way Hauling at the very least.
2            MR. DIEGUEZ:  Can we amend that and say "from"?
3            MR. ELLIS:  From, yes.
4            MR. DIEGUEZ:  Okay.  You have to say it out
5        loud.
6            THE WITNESS:  I don't know.  I'm not aware.
7        The person who was aware of this was Ariel Calzada
8        Torres.
9    BY MR. ELLIS:
10       Q.   And I understand, Ms. Isabel.  I just -- I want
11   to make sure I'm understanding.
12           The people that would work in the office, would
13   that be Ariel?
14       A.   Ariel Calzada Torres, yes.
15       Q.   Sometimes your son?
16       A.   At that time, he would assist them.  And there
17   was a dispatcher, the other dispatcher.
18       Q.   And I was going to say Mr. Yamdy would be the
19   other dispatcher?
20       A.   At that moment, Yamdy.
21       Q.   And then sometimes you would help out in the
22   office?
23       A.   I would help, like, overall in everything with
24   my son in whatever I could.
25       Q.   Although I don't want to be sexist, you could

1    Q.   Do you know whether the driver, Mr. Loyola, was
2  ever paid for his driving on the load involved in this
3  accident?
4    A.   I'm not aware.
5    Q.   Do you know when First Time -- the company
6  called First Time began business?
7    A.   I'm not aware.
8    Q.   Did you have any involvement in the company
9  called First Time?
10   A.   No.
11   Q.   So you told us that you knew you were named
12  president of One Way; correct?
13   A.   Yes, because I was married to my husband, and
14  he put me as president.
15   Q.   Do you know if your husband also put you as
16  president of First Time?
17   A.   I'm not aware, no.
18   Q.   Do you know if your husband made you an officer
19  or an employee in any capacity for First Time?
20   A.   I also am not aware.
21   Q.   Do you know if your husband made you an
22  employee or officer of any other companies that we've
23  talked about today, specifically King's Way or AC
24  Nationwide?
25   A.   No, I am not aware.