IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FREDDIE CAGLE,<br><br>    Plaintiff,<br>v.<br><br>NATIONAL INDEMNITY COMPANY OF THE SOUTH and OLD REPUBLIC INSURANCE COMPANY,<br><br>    Defendants. | Civil Action No.<br><br>2:23-cv-140-RWS |

**DEFENDANT OLD REPUBLIC INSURANCE COMPANY'S BRIEF IN OPPOSITION TO PLAINTIFF FREDDIE CAGLE'S RENEWED MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, Old Republic Insurance Company ("Old Republic"), by and through counsel, and files this Brief in Opposition to Freddie Cagle's ("Cagle") Renewed Motion for Summary Judgment, showing the Court as follows:

### I. INTRODUCTION

In July 2019, Kent Wilson and Freddie Cagle were injured in a motor vehicle accident. Both individuals sued King's Way USA Transport, Inc. ("King's Way"), as the owner/lessor of the tractor-trailer (the "Unit") involved in the accident, and also sued First Time Transport, Inc. ("First Time") as the motor carrier operating the

1

Unit at the time of the Accident. At that time, Wesco Insurance Company ("Wesco") insured First Time, and after concluding that First Time was operating the Unit under its operating authority at the time of the accident, Wesco paid Wilson $750,000 under its MCS-90 public liability coverage for Wesco. For his part, Cagle pleaded, argued, and admitted ***that First Time was the motor carrier*** operating the Unit, but nonetheless asserted that (1) Wesco was responsible for paying Cagle a separate MCS-90 limit and that (2) One Way Hauling Express Co. ("One Way") and others were liable to Cagle – but ***not*** as the motor carrier operating the Unit.

In fact, in February 2023, Cagle's attorney stated to the Court: "First Time is obvious. It's the placard on the side of the truck. In the old days that would have been enough. ***But he's obviously operating under the authority of First Time***." (*See* 02/06/2023 Bench Trial Tr. at 13:12-14 (CAFN 2:21-CV-00052-RWS doc. 147). On the strength of these representations, Cagle obtained rulings that (1) First Time was the motor carrier operating the Unit at the time of the accident, and (2) Ariel Calzada ("Calzada") and One Way were precluded from disputing this fact.

Fast forward to July 2024, and Cagle now completely reverses himself and asserts that One Way – not First Time – was the motor carrier at the time of the accident. The basis for this reversal is almost exclusively a statement from Calzada, the same person whom Cagle's attorney's referred to as "the mastermind," the "puppet master," the "one that has all the shell games," (Doc. 58-9 at 10:11-13,

2

11:11), the "kingpin," the "boss of everything" and the "master kingpin." (*See* 02/06/2023 Bench Trial Tr. at 10:15, 11:9, 24; 12:4, 20:10 14 (CAFN 2:21-CV-00052-RWS doc. 147)). In his renewed motion, Cagle makes no attempt to explain the prior representations to the Court that First Time's status as the motor carrier was "obvious" or to address Calzada's sudden transformation from "master kingpin" to "white knight". And it is just as well, because Cagle is collaterally estopped from doing so for the reasons set forth in Old Republic's summary judgment brief. (*See* Doc. 96-1 at pp. 15-19) and is likewise judicially estopped for the reasons set forth herein.

Furthermore, even if Cagle and Calzada were not precluded from asserting that One Way was the motor carrier at the time of the Accident, which they absolutely are, the Calzada Affidavit, at most, presents dubious evidence that does not meet Cagle's burden to demonstrate the absence of a genuine issue of material fact with respect to the identity of the motor carrier operating the Unit at the time of the accident. Accordingly, Cagle's renewed motion for summary judgment must be denied for the reasons set forth herein and in Old Republic's and National Indemnity Company of the South's ("National Indemnity") responses to Cagle's motion for summary judgment. (*See* Docs. 58-60).

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. CAGLE, CALZADA AND ONE WAY ARE ESTOPPED FROM CLAIMING THAT ONE WAY WAS THE MOTOR CARRIER AT THE TIME OF THE ACCIDENT

#### 1. Cagle Is Collaterally Estopped

In *National Specialty Insurance Co. v. Martin-Vegue*, 644 Fed. Appx. 900, 907-08 (11th Cir. 2016), the Eleventh Circuit held that the insurer providing MCS-90 public liability coverage (here, Wesco) to the motor carrier operating a tractor-trailer at the time of the accident (here, First Time) provides the ***sole*** MCS-90 limit available. Continuing to ignore this precedent, and the established fact that First Time was the motor carrier, Cagle now argues that One Way – not First Time – was the motor carrier at the time of the accident.

First Time's status as the ***sole*** motor carrier responsible for the Unit at the time of the accident is an undisputed fact. The Accident Report identified First Time as the motor carrier, (Doc. 58-3), and the Federal Motor Carrier Safety Administration ("FMCSA") did not attribute the accident to One Way. (Doc. 96-5). A photograph taken at the crash scene shows the First Time placard on the tractor cab. (Doc. 96-6). Further, Isidro Alex Lobaina Loyola ("Loyola") testified that Calzada assigned loads to motor carriers by placing the motor carrier's placard on the tractor's cabin.

4

(Ex. A - 13:14-25). Thus, the competent evidence from the underlying lawsuit filed by Cagle (the "Cagle Action") establishes that First Time was the motor carrier.

Moreover, Cagle's representations to the Court established beyond a doubt that First Time was the motor carrier. In this regard, at the pleading stage, Cagle's March 2021 complaint alleged that Loyola was operating under First Time's authority. (Doc. 58-4 at pp. 1-2). At the dispositive motion stage, Cagle admitted Wesco's statement of fact that First Time was the motor carrier, (Doc. 96-10 at ¶ 3), and Cagle also affirmatively stated that Loyola was "operating the tractor and trailer under the DOT authority for Defendant First Time." (Doc. 58-7 at p. 3 of 20). On December 6, 2021, the Court entered an order declaring that "at the time of the accident, [Loyola] was driving under the Department of Transportation authority for First Time." *Cagle v. Wesco Ins. Co.*, Civil Action No. 2:1-cv-00052-RWS, 2021 U.S. Dist. LEXIS 253756 at *3 (N.D. Ga. Dec. 6, 2021). And then at the trial stage, Cagle represented to the Court that First Time was "obviously" the motor carrier. (*See* 02/06/2023 Bench Trial Tr. at 13:12-14 (CAFN 2:21-CV-00052-RWS doc. 147)). On these bases, Cagle successfully secured a default judgment.

Despite the foregoing evidence, representations, and Orders establishing First Time as the motor carrier, Cagle suddenly now claims that One Way was the motor

carrier. To do so, Cagle relies on statements and/or legal conclusions[1] from Calzada and One Way – the very same defendants against whom he secured a default judgment to preclude them from disputing his pleaded allegations. This argument, made for the first time five years after the Accident, stands the collateral estoppel doctrine on its head and should be rejected outright. Indeed, for the reasons set forth in Old Republic's motion for summary judgment brief at pages 10 to 15, Cagle is estopped from arguing that One Way was the motor carrier at the time of the Accident.

### 2. Cagle Is Judicially Estopped From Asserting That First Time Was Not the Motor Carrier At The Time Of The Accident

Under the judicial estoppel doctrine, a party is precluded "from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *In re Tyson Foods*, 732 F. Supp. 2d 1363, 1371 (N.D. Ga. 2010). The doctrine's purpose is to prohibit parties from "changing positions according to the exigencies of the moment." *Id.* (Internal quotations and citations omitted). And the doctrine applies when a party's inconsistent positions in consecutive actions make a mockery of the judicial system. *Id.* Here, in the Cagle

---

[1] The FMCSA defines "motor carrier" to mean "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Calzada, speaking little English, states in his affidavit that "One Way was the for-hire motor carrier transporting property across state lines..." This statement constitutes an impermissible legal conclusion, and thus, it should not be considered in support of Cagle's renewed motion for summary judgment. *See, e.g., Camp v. TNT Logistics Corp.*, Case No. 04-1358, 2007 U.S. Dist. LEXIS 111429 at *14 (C.D. Ill. Sept. 24, 2007) (barring expert from opining on the legal question of whether a logistics company was a "motor carrier").

Action, Cagle took the position that First Time was "obviously" the motor carrier at the time of the Accident. Now, because that position now longer supports his claims in this case against Old Republic and National Indemnity, Cagle does an "about face" and takes the position that One Way – *not First Time* – was the motor carrier. These inconsistent, and irreconcilable, positions satisfy the first element of the judicial estoppel doctrine.

    Cagle's reliance on an affidavit from Calzada, the "master kingpin," to support Cagle's changed position makes a mockery of the judicial proceedings. In the Cagle Action, Cagle obtained a default judgment that precluded Calzada from challenging the fact that First Time was the motor carrier. Now, after conspicuously avoiding taking discovery from Calzada for years in favor of obtaining a default judgment, and choosing not to pursue the default judgment he obtained against Calzada, Cagle submits an affidavit from Calzada, the "master kingpin" of the defaulting defendants. The Calzada Affidavit is written in English and is carefully tailored to attempt to meet the legal elements needed to trigger MCS-90 public liability coverage from Old Republic and National Indemnity. In other words, an attorney – not Calzada – almost certainly prepared the affidavit for Calzada's signature, in a language with which Calzada is not familiar, and including statements that are entirely consistent with the pleadings, arguments, and admissions in the

Cagle Action. For these reasons, Cagle is judicially estopped from changing his position.

At the very least, Cagle cannot benefit from an affidavit submitted by Calzada for the sole apparent purpose of attempting to enable Cagle to attempt to defeat summary judgment by Old Republic and National Indemnity after he abandoned his litigation and non-party discovery obligations for years. *See American Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 1:06-cv-0695-WSD, 248 F.R.D. 298, 306 (N.D. Ga. Jan. 15, 2008) (striking affidavit submitted in support of a dispositive motion for discovery gamesmanship).

In sum, the Cagle Action established the fact that First Time was the motor carrier at the time of the Accident. The Calzada Affidavit cannot cast doubt on this established fact, and it certainly cannot meet Cagle's burden to demonstrate the absence of a disputed fact that One Way was the motor carrier at the time of the accident. Accordingly, Cagle's summary judgment motion must be denied.

### B. EVEN IF THE CALZADA AFFIDAVIT IS CONSIDERED, CAGLE FAILS TO ESTABLISH THE ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT

#### 1. Cagle Cannot Establish That One Way Leased the Tractor At The Time of the Accident As A Matter Of Law

As an initial matter, Cagle is estopped from arguing that One Way leased the tractor involved in the Accident. In his complaint in the Cagle Action, Cagle pleaded that King's Way owned the Unit and leased it to First Time at the time of the

accident. *See also* Fed. R. Civ. P. 11(b)(3). In its Default Findings, the Court accepted this allegation as true, and precluded Calzada and One Way, as defaulting defendants, from disputing this fact. (*See* Doc. 58-8 at pp. 4-5 of 44). Hence, it is an established fact that First Time leased the Unit at the time of the accident.

Even if the Court considers Cagle's new argument that One Way actually leased the Unit at the time of the accident, there are genuine issues of fact regarding the lease that, by themselves, require the denial of Cagle's motion. First, the lease agreement was purportedly signed by Isabel Cordero. But during her deposition, Ms. Cordero denied signing the lease agreement. (Doc. 96-21 at 44:3-45:22). *See Brown v. St. Landry Parish Sheriff's Dept.*, 298 F. Supp. 3d 879, 890 (W.D. La. 2018) (unauthenticated signature creates issue of fact defeating summary judgment). Second, during the time period from January 20, 2019 to January 20, 2020 that the tractor was supposedly in One Way's exclusive control under the purported lease agreement, the FMCSA inspected the tractor four times while First Time was operating the tractor and one time while One Way was operating the tractor. (Ex. B – FMCSA Inspection Reports). Third, Loyola testified that Calzada assigned loads to motor carriers by placing the motor carrier's placard on the tractor's cabin, (Ex. A - 13:14-25), and it undisputed that the tractor bore First Time's placard. (Doc. 96-6). Fourth, the lease agreement was purportedly entered into between King's Way and First Time in January 2019 for a one-year term. And yet, in August 2019,

9

months before the lease was to expire, King's Way leased the tractor to an entirely different company Silverfox Transportation. (Ex. C - Silverfox Lease). In short, even assuming arguendo that Cagle is not estopped to assert that One Way leased the Unit at the time of the accident, there are a litany of facts that create a triable issue with respect to whether One Way was actually leasing the tractor from King's Way at the time of the accident.

But, even if the lease is considered, and even if the lease is sufficient to establish that One Way was leasing the tractor at the time of the accident, that fact does not make One Way the motor carrier at the time of the accident, and thus, does not entitle Cagle to summary judgment.

### 2. Cagle Cannot Establish That One Way Secured the Load As A Matter Of Law

Cagle is estopped from arguing that One Way secured the load being hauled at the time of the accident. In his complaint in the Cagle Action, Cagle pleaded that the bill of lading identified First Time as the motor carrier. (Doc. 96-7 at ¶ 40). *See also* Fed. R. Civ. P. 11(b)(3). In its Default Findings, the Court accepted this allegation as true, and precluded Calzada and One Way, as defaulting defendants, from disputing this fact. (*See* Doc. 58-8 at pp. 4-5 of 44). Hence, it is an established fact that First Time was the motor carrier responsible for securing and transporting the load at the time of the accident.

Moreover, the Calzada Affidavit cannot establish that One Way secured the load through a load board because Calzada's statements are inadmissible for that purpose. The best evidence rule provides that "[a]n original writing… is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. This rule "applies when a witness seeks to testify about the contents of a writing… without producing the physical item itself…" *Benjamin v. Thomas*, 766 Fed. Appx. 834, 837 (11th Cir. 2019). (Internal quotations omitted). In his affidavit, Calzada states that "One Way secured work for One Way by accessing a load board populated by a broker, including the load which was involved in the Wreck." (Doc. 90-2 at ¶ 4). Despite receipt of a subpoena demanding documents relating to the load, Calzada and One Way never produced the load board post, any communications between One Way and the poster, or a confirmation that One Way had secured the load through the board. Calzada's statements are therefore inadmissible for summary judgment purposes.

Moreover, even if Calzada's statements that One Way secured the load involved in the accident through an unidentified load board are considered, there is a genuine issue of material fact with respect to whether One Way actually secured the load for itself or for another motor carrier. In this regard, Old Republic issued a subpoena to One Way requesting the bill of lading for the load being hauled at the

11

time of the accident.² Not only did One Way not produce the bill of lading, it did not even search for the requested bill of lading – although Calzada-Cordero, Calzada's son and the current president of One Way, testified it should be readily available. Indeed, Calzada-Cordero testified that in 2019, drivers emailed photos of the bills of lading to one.wayhaulingexpress@gmail.com, One Way maintained the bills of lading electronically, and One Way should still have the bill of lading from 2019. (Doc. 96-22 at 15:3-16:10). Calzada-Cordero had not searched this email account before appearing for his deposition. (*Id.*). Given this failure to search for, let alone produce, the bill of lading demanded, Calzada's affidavit simply does not establish the absence of a genuine issue of material fact required to sustain Cagle's motion. Nor does it create a material fact regarding Old Republic's arguments in its own motion for summary judgment that One Way was not the motor carrier.

### 3. Cagle Cannot Establish That One Way Directed Loyola to Operate The Tractor Involved In The Accident

Cagle is estopped from arguing that One Way directed Loyola to operate the tractor involved in the accident. In the Cagle Action, Cagle pleaded and argued that First Time operated the Unit under its operating authority. Indeed, Cagle admitted this fact as an undisputed material fact in the Cagle Action, and the Court found that Loyola was operating under First Time's operating authority at the time of the

---

² Motor carriers are required to issue a bill of lading for property tendered for transportation in interstate commerce and to keep a record of this information [for at least one year]. *See* 49 C.F.R. § 373.101.

accident. It is therefore an established fact that First Time – not One Way – operated the Unit at the time of the accident. Cagle therefore is collaterally estopped from now attempting to establish that One Way directed Loyola to operate the Unit.

Even assuming that Cagle and Calzada were not estopped to dispute this material fact, Calzada's statement that One Way directed Loyola to operate the tractor involved in the Accident does not meet Cagle's burden to establish the absence of a genuine issue of material fact with respect to whether One Way actually directed Loyola to operate the tractor. Photos of the tractor from the accident show a First Time decal on the tractor cabin, which Loyola testified was how Calzada decided which motor carrier was responsible for a load. (Doc. 96-6; Ex. A - 13:11-25).[3] The police report identifies First Time as the motor carrier, which is

---

[3] None of the deposition testimony cited in Cagle's renewed motion supports his contention that Calzada directed Loyola to drive the Unit involved in the Accident for One Way. The cited Calzada-Cordero testimony states:

> Q.   … For this load that was being transported on July 16, 2019, at the time of this accident, do you know how Mr. Loyola came to be the driver of this load?
>
> A.   It was probably assigned by my dad.

(96-22 at 22:15-18). In contrast to the Loyola's actual testimony in which he stated that Calzada assigned the motor carrier by affixing a decal to the tractor cab, Cagle cites the following Loyola testimony:

> Q:   I'm confused. What was owned by new people?
>
> A    Ariel opened several companies in several different names, I think.
>
> Q    Okay. You mentioned that Ariel had companies in other people's names. Do you know any of those names?

13

undeniably consistent with the placement of the First Time decal, and presumably, consistent with the bill of lading, which almost certainly would have been available at the accident scene. (Doc 58-3). Further, the most recent FMCSA inspection report before the Accident shows that on July 4, 2019, less than two weeks before the accident, First Time was operating the tractor. (Ex. C - FMCSA Record – MC00259-MC00260). The competent evidence therefore supports the established fact that Loyola was operating the Unit for First Time at the time of the accident.

Cagle's submission of a supposed One Way payment ledger does not establish that One Way employed Loyola on the date of the accident. At most, this record shows that Calzada produced a record that Loyola was paid certain amounts intermittently during the period from February 2019 to July 15, 2019 – the date before the accident – from an account titled in the ledger as "One Way Haulin…" (Doc. 90-2). This record does not and cannot show One Way paid Loyola for work performed on the date of the accident. Indeed, Old Republic, as the non-movant, is entitled to the favorable inference that One Way did <u>not</u> pay Loyola for work

---

A I don't know. I just saw when they sent it to me. I knew a person. I didn't speak to him a lot, but I knew him. And I saw his name on the company, the First Time company. I don't know.

Q What is that name?

(Ex. A - at 42:8-19). This testimony simply has no relevance to what motor carrier Calzada directed Loyola to drive for at the time of the accident.

performed on behalf of One Way on the date of the accident. *Burgess v. Allstate Ins. Co.*, 334 F. Supp. 2d 1351, 1359 (N.D. Ga. 2003).

Further, speculative statements that One Way would have paid Loyola for work performed on the date of the Accident if he completed the trip cannot establish the absence of a genuine issue of material fact. If One Way employed Loyola on the date of the accident, One Way was obligated under wage laws to pay Loyola the minimum wage for work he performed on behalf of One Way - even if he was employed on a per trip basis. *See Wooldridge v. Gateway Transp. of Ga., Inc.*, Case No. 4:19cv0053-HLM-WEJ, 2019 U.S. Dist. LEXIS 109068 at *9-*11 (N.D. Ga. June 24, 2019) (complaint alleging that motor carrier's per-mile payment methodology failed to pay minimum wage required by law stated viable claim). Again, in the absence of authenticated payment records for work performed on the date of the accident, Old Republic is entitled to the favorable inference that One Way's failure to pay Loyola for work performed on the date of the Accident means that Loyola was not performing work for One Way on the date of the Accident.

In any event, because Calzada's affidavit does not establish the absence of a genuine issue of material fact with respect to One Way's supposed direction of Loyola, Cagle's motion must be denied.

## VI. CONCLUSION

15

Since Cagle's complaint was filed in the Cagle Action in March 2021, it has never been disputed that First Time operated the Unit at the time of the accident. The evidence, the pleadings, the admitted facts, and the Court rulings all established as much. In this action, Cagle acknowledged this established fact but attempted to present a novel legal argument that a judgment against a motor carrier triggered MCS-90 public liability coverage, regardless of whether that motor carrier's negligent operation of a commercial vehicle caused the accident giving rise to the public liability. Indeed, Cagle originally moved for summary judgment on this basis. When confronted with the terms of the MCS-90 endorsement and precedent establishing that a motor carrier actually has to be negligent in operating the commercial vehicle involved in the accident to trigger an MCS-90 surety's obligation to pay, Cagle changed course.

Ignoring all of the evidence, pleadings, admitted facts, prior legal positions and Court rulings, Cagle now asserts that One Way – not First Time – was the motor carrier at the time of the accident. Proving that adversity makes strange bedfellows, Cagle relies on an affidavit from Calzada, the "master kingpin" of "all the shell games," to attempt to establish this new claim. But the doctrines of collateral estoppel and judicial estoppel preclude Cagle's attempt to do so. And even if the Court considers the Calzada Affidavit, the affidavit falls far short of meeting Cagle's

16

burden to establish the absence of a genuine issue of material fact. Accordingly, Cagle's motion must be denied.

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to LR 7.1(D) that this Brief has been prepared with Times New Roman 14 point font and is in compliance with LR 5.1(B).

Respectfully submitted,

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

By: /s/ Terry Brantley
Terry O. Brantley
Georgia Bar No. 078361
Benjamin Yancey
Georgia Bar No. 886446
1420 Peachtree Street
Suite 800
Atlanta, GA 30309-3231
(404) 874-8800
terry.brantley@swiftcurrie.com
ben.yancey@swiftcurrie.com
4856-0998-8566, v. 1