IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

FREDDIE CAGLE,

     Plaintiff,

vs.

NATIONAL INDEMNITY
COMPANY OF THE SOUTH and
OLD REPUBLIC INSURANCE
COMPANY,

     Defendants.

CIVIL ACTION FILE NO.:
2:23-cv-140-RWS

## **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF FREDDIE CAGLE'S RENEWED MOTION FOR SUMMARY JUDGMENT**

National Indemnity Company of the South ("National Indemnity"), by and through its undersigned counsel, submits this brief in opposition to Plaintiff's Renewed Motion for Summary Judgment, and shows this Court the following:

## **INTRODUCTION**

Plaintiff seeks to recover from National Indemnity and/or Old Republic the default judgment entered against One Way Hauling Express Company ("One Way") (Plaintiff's brief, p. 1). Neither National Indemnity nor Old Republic provided base policy coverage to One Way for the accident that occurred on July 16, 2019;

therefore, Plaintiff's claim focuses on the MCS-90 endorsement issued successively to One Way by National Indemnity and then Old Republic.[1] *Id.*

However, for the reasons explained below, the judgment entered against One Way should not trigger any MCS-90 exposure. Alternatively, even if One Way's MCS-90 was triggered, the exposure is Old Republic's, because Old Republic's MCS-90 replaced National Indemnity's. Further, Plaintiff is not entitled to recover under multiple MCS-90s pursuant to well-established law. Accordingly, Plaintiff is not entitled to summary judgment against National Indemnity, and his motion should be denied.[2]

## STATEMENT OF FACTS

### A.    The Underlying Judgment

Plaintiff Freddie Cagle and non-party Kurt Wilson were injured in a multi-vehicle accident on Interstate 85 South on July 16, 2019. *See* National Indemnity Company of the South's Statement of Additional Material Facts ("SAMF"), ¶ 1. The investigating officer deemed the loss to be the fault of Isidro Lobaina Loyola ("Lobaina" or "Loyola"), who was operating a 2014 Freightliner tractor, Vehicle

---

[1] Notably, Plaintiff will not be entitled to the full amount of the default judgment from Old Republic or National Indemnity under any theory, as Old Republic's MCS-90 creates an obligation to pay a judgment up to $1,000,000 if it applies, and National Indemnity's MCS-90 creates an obligation to pay a judgment up to $750,000 if it applies. *See* SAMF, ¶¶ 26, 38.

[2] National Indemnity filed its Motion for Summary Judgment seeking summary judgment from the Court that National Indemnity has no obligation to pay any portion of the default judgment. (Doc. 97).

Identification Number 1FUJGLBG6ELFW5091 ("Accident Vehicle") at the time of the crash. *Id*. at ¶ 2. In a previously litigated matter, Plaintiff argued, and this Court agreed, that Lobaina was operating his rig under the motor carrier authority of First Time Transport, Inc. ("First Time") of Cutler Bay, Florida, USDOT census number 3180047, docket number MC 125574. *Id.* at ¶ 3 (Plaintiff wrote, "Defendant Loyola and an unknown driver were operating the tractor and trailer under the DOT authority for Defendant First Time"). First Time was insured under a policy issued by Wesco Insurance Company. *Id.* at ¶ 4. The 2014 Freightliner was not covered under the Wesco policy, but Wesco settled Wilson's claim for $750,000 under the MSC-90 Endorsement attached to its policy.[3] *Id.* at ¶ 5. Although Wesco was aware of Plaintiff's claim, the entirety of the MCS-90 proceeds was paid to Wilson. *Id*. at ¶ 6.

The Georgia Motor Vehicle Crash Report identified King's Way USA Transport ("King's Way") as the owner of the rig, not One Way. *Id.* at ¶ 7. In his deposition, Lobaina recognized King's Way as one of the entities operated by Ariel Calzada ("Calzada") and his wife Isabel Cordero ("Cordero"). *Id.* at ¶ 8. Calzada and Cordero also operated First Time and One Way. *Id*. at ¶ 9. Prior to the accident, Lobaina worked for One Way, First Time, and Kings Way as a commercial driver.

---

[3] The MCS-90 Endorsement, a USDOT form, is described in detail below.

*Id.* at ¶ 10. According to Lobaina, Calzada and Cordero would decide which motor carrier's authority their drivers would operate their vehicles under depending, in part, on which carrier's authority was in force at a given time, and they would change the vehicles' placards accordingly. *Id.* at ¶ 16. Lobaina would be told by the principals which of the three companies they ran he would be driving for on any given trip. *Id.* at ¶ 11.

No information has been produced concerning whether King's Way was an active entity in 2019 or whether it was insured, but public records reveal that at the time of the loss, King's Way was not authorized by the USDOT to haul goods interstate.[4] *Id.* at ¶¶ 12, 13. Calzada made payment for Lobaina's trips, usually through One Way, regardless of which entity was the motor-carrier for hire, but Calzada and/or One Way did not pay Lobaina for the July 16, 2019 trip. *Id.* at ¶¶ 47, 48.

One Way was an active motor carrier in 2019. *Id.* at ¶ 15. It was insured by National Indemnity under policy number 74TRS100541, which went into effect on May 5, 2019 (the "National Indemnity Policy"). *Id.* at ¶ 17. The National Indemnity Policy listed three tractors, but the Accident Vehicle was not one of them. *Id.* at ¶ 18.

---

[4] King's Way USA held authority from February 4, 2014 until its authority was revoked on August 5, 2014. *See* SAMF at ¶ 12.

Following the accident, Cagle sued Lobaina, Kings Way, First Time, One Way, and others in this Court. *Id.* at ¶ 19. National Indemnity received no notice of the suit prior to the Court's entry of default. *Id.* at ¶ 20.  On February 15, 2023, the Court entered a default judgment against various defendants, including One Way. *Id.* at ¶ 21. The Court also entered judgment against Lobaina. *Id.* Plaintiff's combined compensatory damages (over $3 million) exceed any obligation Old Republic or National Indemnity could have under their respective MCS-90s. *Id.* at ¶¶ 26, 38.

**B.     BMC-91x Filings and the MCS-90 Endorsement**

No coverage is available from National Indemnity under its base policy, and Old Republic contends it does not have coverage under its base policy either. *Id.* at ¶¶ 22, 41.  Instead, Cagle seeks recovery from defendants under the MCS-90 each issued on behalf of One Way at different points in time. *See* the Complaint filed July 25, 2023 at Doc. 1.  As will be set forth in more detail below, Plaintiff is not entitled to recover money from more than one MCS-90, and under no set of facts does National Indemnity's MCS-90 apply. Therefore, Plaintiff's summary judgment motion should be denied as to National Indemnity.

1. <u>Financial Responsibility for One Way</u>

The Licensing and Insurance website for the United States Department of Transportation ("USDOT") shows that One Way was first authorized as a for-hire

carrier in 2014 and has been continuously authorized since 2016. *Id.* at ¶ 23. Various insurers have provided One Way financial security (one at a time) since then. *Id.* at ¶ 24. Providing such security is accomplished in two stages: first, the insurer files a BMC 91 or BMC 91x certificate of insurance with the USDOT. 49 C.F.R. 387.313T (a)(2)(i).[5] *See* Sadler, Carl R., and Rabinovich Laurence, *The MCS-90 Book*, 3rd ed. (2020), p. 20-21. That filing becomes a public record as it appears online on the Licensing and Insurance website. Second, the insurer adds to the policy the Form MCS-90, which is not a traditional endorsement, but which was promulgated by USDOT, and which sets forth the terms of the issuing insurer's commitment. *Id.*

National Indemnity issued its policy to One Way effective May 5, 2019, and made a $750,000[6] BMC-91x filing effective that same day certifying that One Way was in compliance with the USDOT's financial security requirements. *See* the SAMF, ¶ 25. An MCS-90, also referencing limits of $750,000, was attached to the National Indemnity Policy. *Id.* at ¶ 26.

Unbeknownst to National Indemnity when it issued its policy, One Way was utilizing several rigs, including some owned by Ryder, in its business. *Id.* at ¶ 27.

---

[5] The rules provide for two other options to establish financial security but almost all motor carriers utilize the BMC-91x/MCS-90 option. *See* Sadler, Carl R., and Rabinovich Laurence, *The MCS-90 Book*, 3rd ed. (2020), p. 20-21.

[6] $750,000 is the minimum amount of financial security required for motor carriers who haul no hazardous or semi-hazardous cargoes (49 C.F.R. § 387.9) and was the amount of security One Way required.

These rigs were not scheduled under the National Indemnity Policy. *Id*. at ¶ 28. During the policy period, National Indemnity became aware, through USDOT inspection data, that One Way was using vehicles that were not scheduled on its policy. *Id.* at ¶ 29. During discovery, Old Republic, which insures Ryder, produced a series of e-mails showing that in August 2019, the insurance broker AON (the second largest brokerage in the world in 2023[7]) became aware of National Indemnity's concern that One Way was using vehicles that were not scheduled on National Indemnity's Policy. *Id.* at ¶ 30. On August 15, 2019, AON's Ryder Service team asked if Ryder would arrange to have an MCS-90 issued since the company had been leasing Ryder trucks. *Id.* at ¶ 31.

Kelli Collins, identified in the email as a Senior Underwriter with Ryder Fleet Protection Solutions, explained that some insurers do not permit "split fleets," that is, having part of the carrier's fleet covered under their insurance policy, and then leasing other vehicles from Ryder which would be insured through Ryder. *Id.* at ¶ 32. Kelli Collins suggested issuing the BMC-91X filing and having One Way hold them harmless for losses involving non-Ryder vehicles so One Way could keep its current insurance with National Indemnity. *Id.* at ¶ 33.

---

[7] *See* https://www.businessinsurance.com/article/00010101/STORY/912358433/Top-insurance-brokers,-No-2.Aon-PLC#:~:text=Aon%20reported%20%2412.4%20billion%20in,of%20the%20world's%20largest%20brokerages.

Donald B. Golden, Inside Business Development Manager at Ryder, and Ryder's Mario Cotarelo were also on the email chain. *Id.* at ¶ 34. On that same day, August 15, 2019, Donald Golden explained to Kelli Collins and Mario Cotarelo:

> [T]his is an extremely urgent matter… Our client One Way Hauling Express, leases 5 tractors with us and has our coverage for both liability and physical damage. The insurance company who insures their non-Ryder vehicles has told our client that they will either charge them for duplicate insurance coverage on our leased vehicles or cancel their insurance on their non-Ryder vehicles since they do the filings for them.

*Id*. at ¶ 35.

Kelli Collins responded, "Mario we can do the filing. The filing will be effective 6/14/2019. AON please issue the filing." *Id*. at ¶ 36. In a different e-mail, Kelli Collins explained that "we can back date to the date when they got the Ryder units." *Id*. at ¶ 37.

2.  Effective June 14, 2019, the National Indemnity Filing was Replaced by Old Republic's Filing

Ultimately, a filing was made for One Way by Old Republic dated back to June 14, which replaced National Indemnity's BMC-91x filing and the MCS-90 endorsement that accompanied it. *Id.* at ¶¶ 38, 39. One Way and its principals did not appear in the tort action; hence the default judgment was entered against them. *Id.* at ¶ 42. The Court found that One Way, among others, was vicariously liable for Lobaina's negligence and was liable as a defaulting defendant. *Id.* at ¶ 43. Significantly, Plaintiff *admitted*, and this Court held, that at the time of the loss, the

Accident Vehicle was being operated under First Time's USDOT motor carrier authority. *Id.* at ¶ 3 ("Defendant Loyola and an unknown driver were operating the tractor and trailer under the DOT authority for Defendant First Time.") This conforms with the Georgia Motor Vehicle Crash Report, which identified First Time as the motor carrier of record, the photograph showing a First Time placard on the door of the truck at the scene of the accident, and the testimony of John Pecoraro. *Id.* at ¶¶ 44, 46. Furthermore, Lobaina recalls hauling the load on July 16, 2019 for King's Way or First Time, not One Way. *Id.* at ¶ 45.

Notably, the USDOT's Licensing and Insurance website shows that National Indemnity made a BMC 91x filing on May 5, 2019. *Id.* at ¶ 39. That filing – and the MCS-90 Endorsement that accompanied it – were replaced by the Old Republic filing and MCS-90 Endorsement dated June 14, 2019.[8] *Id*. For these reasons, and those set forth in more detail below, summary judgment as to Plaintiff's claims against National Indemnity should be denied.

## **ARGUMENT AND CITATION TO AUTHORITY**

As discussed in more detail below, the law is clear there can be only one motor carrier for hire whose authority is being used at any one time, and in this case, it was not One Way. Accordingly, neither National Indemnity's MCS-90 nor Old

---

[8] Old Republic's filing and MCS-90 Endorsement show a liability limit of $1,000,000. *See* SAMF, ¶ 38.

Republic's MCS-90 can be triggered. If, however, the Court concludes (contrary to Plaintiff's admission and the Court's finding in an earlier case) that One Way's MCS-90 is triggered, then Old Republic's MCS-90 will apply, not National Indemnity's.

## I.    <u>Standard of Review</u>

"Summary judgment is proper where the evidence 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Baxter v. Roberts,* 54 F.4th 1241, 1253 (11th Cir. 2022)(*quoting* Fed. R. Civ. P. 56(a)). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Id*. (*quoting Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994)). A court should deny summary judgment, however, if there is sufficient evidence to conclude that a "'jury could reasonably find for [the non-moving] party.'" *Id*. (*quoting Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (*en banc*)). The Court should "'view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant' … 'to the extent supportable by the record.'" *Id*. (*quoting Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020); *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)).

II.    **The Court Should Deny Summary Judgment Because Neither National Indemnity's Nor Old Republic's MCS-90 Applies.**

Plaintiff argues that he is somehow entitled to the limits of both the National Indemnity MCS-90 and the Old Republic MCS-90, even though they were never in effect at the same time. This theory, however, defies the purpose of the MCS-90 and years of precedent. Moreover, neither National Indemnity nor Old Republic's MCS-90 applies because the objective evidence demonstrates that One Way was not operating as the for-hire motor carrier under whose authority Lobaina drove the Accident Vehicle at the time of the crash, a prerequisite to MCS-90 applicability. Additionally, Wesco, the insurer for the motor carrier under whose authority Lobaina was driving, already paid its financial responsibility limits based on its conclusion that its insured First Time was the for-hire motor carrier.[9] Thus, the Court should deny Plaintiff's motion.

A.  **Neither National Indemnity's nor Old Republic's MCS-90 Applies Because Lobaina Was Not Operating the Accident Vehicle at the Time of the Crash Under One Way's Motor Carrier Authority.**

By way of background, to operate as an interstate for-hire motor carrier, an entity must register with the USDOT and satisfy its requirements. *See* 49 U.S.C. § 13901. Under USDOT regulations, motor carriers must, among other requirements,

---

[9] Based on Wesco's investigation, Wesco determined First Time was the motor carrier. *See* SAMF, **Exhibit 22**. The Court also concluded that First Time was the for-hire motor carrier, and Plaintiff argued as much in the Wesco action. *Id.* at ¶ 3.

arrange for satisfactory proof of financial security. *See* 49 U.S.C. § 13906; 49 C.F.R. §§ 387-301T, 387-303T. Providing such security is accomplished in two stages: first, the insurer files a BMC 91 or BMC 91x certificate of insurance with USDOT. 49 C.F.R. 387.313T (a)(2)(i).[10] Sadler, Carl R., and Rabinovich, Laurence, *The MCS-90 Book*, 3rd ed. (2020), p. 20-21. That filing becomes a public record as it appears online on the Licensing and Insurance website. Second, the insurer adds to the policy the Form MCS-90, which is not a traditional endorsement, but rather was promulgated by USDOT and sets forth the terms of the issuing insurer's commitment. *Id.*

The MCS-90, and its predecessor forms, have been interpreted in hundreds of cases around the country. Its provisions require the issuing insurer to pay certain judgments entered against the named insured motor carrier even where there is no coverage; for instance, where the accident vehicle was not scheduled on the policy. Where the insurer pays under the MCS-90, it pays as a surety, rather than as a traditional insurer. *Nat'l Specialty Ins. Co. v. Martin-Vegue,* No. 14-15811, 2016 U.S. App. LEXIS 3317, *13 (11th Cir. Feb. 25, 2016).

The Motor Carrier Act of 1980 ("MCA") "addressed safety issues and financial responsibility for trucking accidents." *Id.*, at *13-14 (*citing Carolina Cas.

---

[10] The rules provide for two other options to establish financial security but almost all motor carriers utilize the BMC-91x/MCS-90 option.

*Ins. Co. v. Yeates,* 584 F.3d 868, 873 (10th Cir. 2009)(*en banc*)). "Motor carriers transporting non-hazardous property," which are "registered to engage in interstate commerce," are subject to a $750,000 "minimum insurance requirement." *Id.*, at *14 (*citing* 49 U.S.C. § 31139(b); 49 C.F.R. § 387.9). Motor carriers "establish proof of that responsibility in one of three ways: '(1) by an MCS-90 endorsement, (2) by a surety bond, or (3) by self-insurance.'" *Id.* (*quoting Yeates*, at 874; and *citing* 49 C.F.R. § 387.7(d)(1)-(3)).

In other words, the MCS-90 endorsement and the regulatory structure established by the USDOT were designed to assure the public that a motor carrier operating in interstate commerce will be financially responsible up to certain limits if there is an accident. *Nat'l Specialty*, *supra*, 2016 U.S. App. LEXIS 3317, *13. The mandated limits do *not* increase when there are multiple claimants. *Carolina Cas. Ins. Co. v. Estate of Karpov,* 559 F.3d 621 (7th Cir. 2009); *Hamm v. Canal Ins. Co.,* 10 F. Supp. 2d 539 (M.D.N.C. 1998), *aff'd,* No. 98-2068, 1999 U.S. App. LEXIS 7631 (4th Cir. April 21, 1999). The Eleventh Circuit has explained that an MCS-90 endorsement will apply only if the motor carrier to which the endorsement was issued was the for-hire carrier whose authority was being used at the time of the accident. Only one motor carrier authority can be used at any one time. *Nat'l Specialty, supra,* at *17. Accordingly, Plaintiff's suggestion that both the National Indemnity and Old Republic MCS-90 endorsements apply is impossible. At most,

one MCS-90 endorsement can apply, but even that is not the case where, as here, the accident involved a vehicle used in the business of a different motor carrier.

A for-hire motor carrier is in "the business of transporting, for compensation, the goods or property of another." *Id*., at *17 (*quoting* 49 C.F.R. § 387.5). In *Nat'l Specialty*, two motor carriers had "connections both to the accident and to each other." *Id*., at *2. Both entities had MCS-90 endorsements attached to their policies. However, the only MCS-90 that was triggered was the one issued to the motor carrier actually using its carrier authority at the time of the accident. *Id*., at *17-18. Thus, the MCS-90 endorsement does not apply if it was issued to a motor carrier that was not the for-hire motor carrier at the time of the accident. *Id.*; *see also Herrod v. Wilshire Ins. Co,* 2012 U.S. App. LEXIS 21057, *18-19 (10th Cir. Oct. 11, 2012)("Accordingly, in order to determine whether Wilshire's MCS-90 endorsement applies, it must be determined initially whether Espenschied was operating as a for-hire motor carrier at the time of the accident").

Here, One Way was *not* the for-hire motor carrier in the underlying accident. *See* SAMF, ¶¶ 3, 44, 45, 46. Indeed, the Court has already concluded as much: the Accident Vehicle was not operating under One Way's authority at the time of the accident. *Id.* at ¶ 3. In its December 6, 2021 Order granting Wesco's Summary Judgment Motion (Doc. 111, p. 2), the Court determined that Lobaina was operating

the Accident Vehicle at the time of the accident under First Time's USDOT authority. *Id.*

   In Plaintiff's Renewed Motion for Summary Judgment, he mischaracterizes the factual record to support his position that One Way was the for-hire motor carrier at the time of the accident. For instance, Plaintiff claims that National Indemnity's Responses to Plaintiff's Requests for Admission support his position. *See* Brief in Support of Plaintiff's Renewed Motion for Summary Judgment ("Plaintiff's Renewed Motion"), Exhibit 11. However, in its Responses, National Indemnity accurately admitted One Way was *a* for hire motor carrier and remained *a* for hire motor carrier on the date of loss. *Id.* National Indemnity did not admit that One Way was *the* for-hire motor carrier for the rig involved in the accident or that Lobaina was driving under One Way's USDOT authority at the time of the accident. *Id.* Old Republic in its Responses to Plaintiff's Requests for Admission also did not admit that One Way was the for-hire motor carrier for the accident rig. *See Id.,* Exhibit 12. Indeed, the reliable evidence in the record supports the opposite conclusion – that One Way was *not* the for-hire motor carrier. *See* SAMF, ¶¶ 44, 45, 46.

   Plaintiff also misstates the significance of certain deposition testimony in his Renewed Motion. For example, Yadiel Cordero testified that One Way was a for hire motor carrier from 2014 through the present and that it was a for-hire motor

carrier on the date of loss. *See Id.,* Exhibit 6. Aside from this statement being incorrect as compared to the evidence already available in the record (One Way did not have authority continuously since 2014 – *see* SAMF, ¶ 23), Yadiel Cordero did not testify that One Way was the for-hire motor carrier for this particular load. *Id.* Isabel Cordero's deposition testimony is no different. *Id.,* Exhibit 7.

Further, Plaintiff makes the untenable argument that One Way was the for-hire motor carrier merely because One Way paid Lobaina in 2019. In his Renewed Motion, Plaintiff introduces a 2019 Form 1099 that Lobaina may have received from One Way. *See* Plaintiff's Renewed Motion, Exhibit 10. However, the 1099 only shows that Lobaina received income from One Way in 2019. The form does not constitute evidence that One Way was the for-hire motor carrier for the load at issue at the time of the accident. Moreover, Plaintiff relies on Yadiel Cordero's testimony, Exhibit 6, and a payment ledger, Exhibit 8, allegedly showing that One Way paid Lobaina. As with all the evidence cited by Plaintiff in his Renewed Motion, the payment ledger says nothing about whether One Way was the for-hire motor carrier at the time of the accident, nor does it shed any light on the issue. Lobaina testified that sometimes he did work for One Way, depending on what the company principal told him on the date in question and which placard was on the vehicle that day. *See* SAMF, ¶¶ 10, 11, 16. Further, Mr. Calzada made payment for Lobaina's trips, usually through One Way, regardless of which entity was the motor carrier for-hire.

*Id.* at ¶ 47. The mere fact that One Way was registered as a for hire carrier and that it may have paid Lobaina for some of his work, does not contradict the previously established fact that First Time was the carrier of record for the vehicle involved in the accident on the date of loss. *Id.* at ¶¶ 3, 44, 45, 46.

Plaintiff also cites to an alleged lease agreement between King's Way and One Way. *Id.,* Exhibit 9. This lease does not establish that One Way was the for-hire motor carrier at the time of the accident, and certainly does not overrule the objective evidence that First Time was the for-hire carrier. *Id.* at ¶¶ 3, 44, 45, 46. The only evidence Plaintiff presents that arguably supports his position is the conclusory affidavit of Ariel Calzada, which contradicts established fact. *See* Plaintiff's Renewed Motion, Exhibit 5.  While Calzada purports to attest that One Way was the for-hire motor carrier at the time of the accident, based on a broker load board he supposedly used to book the load, he fails to provide a confirmation from the load board or a screen shot showing he booked the load as he now describes. The affidavit was signed on July 9, 2024, five years after the accident, and contradicts - without support - the documentary evidence in the record, Plaintiff's previous positions, and this Court's Order in the underlying lawsuit. *Id.* at ¶¶ 3, 44, 45, 46.

Plaintiff also argues in his Renewed Motion that One Way illegally acted as a double broker, Br. pp. 3-4, which supports that First Time was the actual for-hire motor carrier. The liability of a broker cannot trigger MCS-90 exposure. If One Way

was the broker, that would comport with all the existing evidence showing that First Time was acting as the for-hire motor carrier. In other words, this argument completely undermines Plaintiff's claim to entitlement to MCS-90 proceeds. And the objective evidence, *e.g.,* the Georgia Motor Vehicle Crash Report, the picture of the placard on the vehicle taken after the accident, the Affidavit of John Pecoraro, and the testimony of Lobaina, all support National Indemnity's position: that First Time was the for hire motor carrier at the time of the accident, which is why the Plaintiff acknowledged and the Court held as much, and why Wesco, which insured First Time on the date of loss, ultimately agreed to pay under its MCS-90. *See* SAMF, ¶¶ 44, 45, 46. Accordingly, neither National Indemnity's nor Old Republic's MCS-90 endorsement should apply, and Plaintiff's motion for summary judgment should be denied.

## B. National Indemnity's and Old Republic's MCS-90s Do Not Apply Because the Financial Responsibility Obligation Has Already Been Paid by the Insurer for the Motor Carrier Under Whose Authority Lobaina Was Driving.

"Federal law controls the interpretation and operation of the MCS-90." *Nat'l Specialty,* 2016 U.S. App. LEXIS 3317, *15 *(citing Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 492 (4th Cir. 2003)). Under the MCS-90, insurers are obligated to act as a surety. *Id*. *(quoting Yeates*, 584 F.3d at 878). Accordingly, the requirement:

> is triggered only when: (1) the underlying insurance policy (to
> which the endorsement is attached) does not provide liability
> coverage for the accident, and (2) the carrier's other insurance
> coverage is either insufficient to meet the federally-mandated
> minimums or non-existent.

*Id*. (*quoting Yeates*, 584 F.3d at 879). If a motor carrier's base insurance policy pays

a judgment satisfying the regulatory minimum, the goal of public financial

responsibility has been accomplished and the endorsement does not apply. *Id.* Here,

First Time's insurer Wesco paid $750,000 under its MCS-90, the mandatory limits,

so no other MCS-90 is available. *See* SAMF, ¶¶ 5, 6. The mandated limits do not

increase when there are multiple claimants. *Carolina Cas. Ins. Co. v. Estate of

Karpov,* 559 F.3d 621 (7th Cir. 2009); *Hamm v. Canal Ins. Co.,* 10 F. Supp. 2d 539

(M.D.N.C. 1998), *aff'd,* No. 98-2068, 1999 U.S. App. LEXIS 7631 (4th Cir. April

21, 1999). Accordingly, Plaintiff's motion for summary judgment should be denied.

## C. Judicial Estoppel Bars Plaintiff's Claims Under This Lawsuit.

Because Plaintiff admitted in an earlier lawsuit that the Accident Vehicle was

not operating under One Way's authority at the time of the accident,[11] and this Court

agreed, judicial estoppel applies here to prevent Plaintiff from taking a position

contrary to what he asserted in opposition to Wesco's Summary Judgment Motion.

*See Korman v. Iglesias*, No. 18-13772, 2019 U.S. App. LEXIS 18494, *2-3 (11th

---

[11] The evidence submitted by Plaintiff in support of his Renewed Motion is largely consistent with
this conclusion.

Cir. June 20, 2019)("Judicial estoppel is an equitable doctrine intended to protect the

integrity of the courts from 'parties who seek to manipulate the judicial process by

changing their legal positions to suit the exigencies of the moment'")(*quoting Slater*

*v. U.S. Steel Corp.*, 871 F.3d 1174, 1176 (11th Cir. 2017)(*en banc*)).

> [W]here a party assumes a certain position in a legal proceeding, and
> succeeds in maintaining that position, he may not thereafter, simply
> because his interests have changed, assume a contrary position,
> especially if it be to the prejudice of the party who has acquiesced in
> the position formerly taken by him.

*Id.* (*quoting Davis v. Wakelee*, 156 U.S. 680, 689 (1895)); *see also New Hampshire*

*v. Maine*, 532 U.S. 742, 750-51 (2001).

Here, Plaintiff is taking a contrary position to the one he took in the

Underlying Lawsuit to Defendants' detriment. Plaintiff previously admitted that the

Accident Vehicle was operating under First Time's authority, not One Way's, at the

time of the accident. *See* SAMF, ¶ 3. Indeed, in its December 6, 2021 Order granting

Wesco's Summary Judgment Motion (Doc. 111, p. 2), the Court determined that

Lobaina was operating the Accident Vehicle at the time of the accident under First

Time's authority. *Id.* Under Eleventh Circuit precedent, this issue is barred by the

doctrine of judicial estoppel. Therefore, the Court should bar Plaintiff from asserting

in the matter *sub judice* a position contrary to his earlier assertion in opposition to

Wesco's Summary Judgment Motion. *See Korman,* 2019 U.S. App. LEXIS 18494,

*2-3.

**III.    The Court Should Grant National Indemnity Summary Judgment Because Multiple MCS-90 Endorsements Cannot Apply Simultaneously To The Same Motor Carrier, And National Indemnity's Financial Responsibility Obligations Were Cancelled By Replacement.**

If the Court holds that Plaintiff can recover under One Way's MCS-90 endorsement, it is Old Republic's MCS-90 that should be triggered, not National Indemnity's. Because Old Republic's MCS-90 would be the one to apply, summary judgment should be denied as to Plaintiff's claims against National Indemnity.

An MCS-90 endorsement remains in force "continuously" until terminated in accordance with applicable regulations. *See* 49 CFR § 387.313T(a)(6). Thus, when the Federal Motor Carrier Safety Administration ("FMCSA") "accept[s]" a replacement filing, potential "liability" under a prior MCS-90 "terminate[s]" on that date. *See* 49 CFR § 387.313T(e)(An MCS-90 "which [has] been accepted by the FMCSA under these rules may be replaced by" another MCS-90, "and the liability of the retiring … surety under such [MCS-90] shall be considered as having terminated as of the effective date of the replacement [MCS-90], provided the said replacement [MCS-90] is acceptable to the FMCSA under the rules and regulations in this part."). *See also* 49 CFR § 387.7(c) (An MCS-90 "may be replaced" by another MCS-90. "The liability of the retiring insurer or surety, as to events after the termination date, shall be considered as having terminated on the effective date of the replacement [MCS-90] or at the end of the 35-day cancellation period required

in paragraph (b) of this section, whichever is sooner.")

Here, any liability under the MCS-90 that National Indemnity had was terminated upon replacement by Old Republic's filing. AON became aware of National Indemnity's concern that One Way was using vehicles that were not scheduled on National Indemnity's Policy. *Id.* at ¶ 30. On August 15, 2019, AON's Ryder Service team asked if Ryder would arrange to have an MCS-90 issued since the company had been leasing Ryder trucks. *Id.* at ¶ 31. Kelli Collins suggested issuing a BMC-91X filing and having One Way hold them harmless for losses involving non-Ryder vehicles so One Way could keep its current insurance with National Indemnity. *Id.* at ¶ 33. On that same day, August 15, 2019, Donald Golden, Inside Business Development Manager at Ryder, explained to Kelli Collins and Mario Cotarelo:

> [T]his is an extremely urgent matter… Our client One Way Hauling Express, leases 5 tractors with us and has our coverage for both liability and physical damage. The insurance company who insures their non-Ryder vehicles has told our client that they will either charge them for duplicate insurance coverage on our leased vehicles or cancel their insurance on their non-Ryder vehicles since they do the filings for them.

*Id*. at ¶¶ 34, 35.

Kelli Collins responded by directing Mario Cotarelo to make a financial responsibility filing effective June 14, 2019. *Id*. at ¶ 36. In a different e-mail, Kelli Collins explained that "we can back date to the date when they got the Ryder units."

*Id.* at ¶ 37. And, in fact, a filing was made for One Way dated back to June 14, which replaced National Indemnity's filing and accompanying MCS-90. *Id.* at ¶¶ 31 (Exhibit 17), 38, 39. Old Republic was aware of the filing. *Id.* Accordingly, National Indemnity's MCS-90 was no longer in force on the effective date of Old Republic's replacement MCS-90, June 14, 2019. Thus, National Indemnity has no liability to Plaintiff under National Indemnity's canceled and replaced MCS-90, and Plaintiff's summary judgment motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, National Indemnity Company of the South respectfully requests the Court deny Plaintiff's Motion for Summary Judgment.

This 7th day of August, 2024.

**BARCLAY DAMON, LLP**
1270 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 784-5800
lrabinovich@barclaydamon.com

*/s/ Laurence J. Rabinovich*
LAURENCE J. RABINOVICH
New York Bar No.: 2033231
*Admitted via Pro Hac Vice*

**BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, PC**
Monarch Plaza, Suite 1500
3414 Peachtree Road NE
Atlanta, Georgia 30326
Telephone:  (404) 577-6000
Facsimile:   (404) 221-6501
mbarber@bakerdonelson.com
mdemasi@bakerdonelson.com

 */s/  Melody H. Demasi*
MARK A. BARBER
Georgia Bar No. 036875
MELODY H. DEMASI
Georgia Bar No. 988861

*Attorneys for Defendant National
Indemnity Company of the South*

<u>**CERTIFICATE OF SERVICE AND COMPLIANCE**</u>

I certify that this pleading complies with LR 5.1 and 7.1 as to font, spacing, and margins. I further certify that I served a copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF FREDDIE CAGLE'S RENEWED MOTION FOR SUMMARY JUDGMENT** via CM/ECF to the following attorneys of record:

Danny R. Ellis
Truck Wreck Justice, PLLC
1419 Market Street
Chattanooga, TN 37402
danny@truckwreckjustice.com

Mark Alexander
Stewart, Melvin & Frost, LLP
P.O. Box 3280
Gainesville, Georgia 30503
malexander@smf-law.com

Andrew Gould
Princenthal, May & Wilson, LLC
750 Hammond Dr., Bldg. 12
Sandy Springs, Georgia 30328
andrew@princemay.com

Benjamin Yancey
Terry O. Brantley
Swift, Currie, McGhee & Hiers, LLP
1420 Peachtree Street, Suite 800
Atlanta, GA 30309
terry.brantley@swiftcurrie.com
ben.yancey@swiftcurrie.com

This 7th day of August, 2024.

**BAKER, DONELSON, BEARMAN CALDWELL & BERKOWITZ, PC**

Monarch Plaza, Suite 1500
3414 Peachtree Road NE
Atlanta, Georgia 30326
Telephone:  (404) 577-6000
Facsimile:   (404) 221-6501
Email: mdemasi@bakerdonelson.com

 _/s/   Melody H. Demasi_
MELODY H. DEMASI
Georgia Bar No. 988861
*Attorney for Defendant National Indemnity Company of the South*