IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FREDDIE CAGLE, § § § Plaintiff, § § Civil Action No. v. § § 2:23-CV-140-RWS NATIONAL INDEMNITY § COMPANY OF THE SOUTH, and § OLD REPUBLIC INSURANCE § COMPANY, § § Defendants. § | |

**PLAINTIFF'S RESPONSE TO NATIONAL INDEMNITY COMPANY OF THE SOUTH'S STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE DISPUTE EXISTS**

COMES NOW, Plaintiff, Freddie Cagle, by and through his counsel, and responds to Defendant National Indemnity Company Of The South's Statement Of Material Facts As To Which No Genuine Dispute Exists:

### FACTS

*A. The Underlying Judgment*

1. Plaintiff Freddie Cagle and Kurt Wilson were injured in a multi-vehicle accident on Interstate 85 South on July 16, 2019.

**RESPONSE: Admit.**

2. The investigating officer deemed the loss to be the fault of Isidro Lobaina Loyola ("Lobaina" or "Loyola"), who was operating a 2014 Freightliner tractor, Vehicle Identification Number 1FUJGLBG6ELFW5091 ("Accident Vehicle") at the time of the crash.

**RESPONSE: Admit.**

3. In a previously litigated matter, Plaintiff argued, and this Court agreed, that Lobaina was operating his rig under the motor carrier authority of First Time Transport, Inc. ("First Time") of Cutler Bay, Florida, USDOT census number 3180047, docket number MC 125574. *See* applicable pages of Plaintiff's Response to Defendant Wesco's Motion for Summary Judgment and Brief in Support of Defendant Wesco's Motion for Summary Judgment (Doc. 106 in the lawsuit styled *Freddie Cagle v. Wesco Insurance Company, et al.,* Civil Action File No. 2:21-CV-52-RWS (the "Underlying Lawsuit")) at Exhibit 2 ("Defendant Loyola and an unknown driver were operating the tractor and trailer under the DOT authority for Defendant First Time"); *see also* Order Granting Wesco's Motion for Summary Judgment in the Underlying Lawsuit at Exhibit 3, p. 2; and publicly available information at Quick Transport Solutions Inc., First Time Transport, Inc.

(https://www.quicktransportsolutions.com/truckingcompany/florida/first-timetransport-inc-usdot-3180047.php).

**RESPONSE: Deny. Plaintiff made clear it made the admission "for purposes of summary judgment motion" only. (Exhibit 1, Plaintiff's Response to Defendant Wesco's Motion for Summary Judgment, ¶ 3.)**

**Additionally, admissions made only for purpose of responding to Wesco's summary judgment are not binding in this case. Rather, facts determined by the Court in the Court's final order are binding. To that end, when apportioning liability between all the defendants, the Court determined, "Defendants in Default are liable for the damages arising from their own negligence, and because they employed Defendant Loyola at the time of the accident, they are also vicariously liable to Plaintiff for Defendant Loyola's liability." (Doc. 142, Findings of Fact and Conclusions of Law, ¶¶ 35 and 36.)**

4. First Time was insured under a policy issued by Wesco Insurance Company.

**RESPONSE: Admit.**

5. The 2014 Freightliner was not covered under the Wesco policy, but Wesco settled Wilson's claim for $750,000 under the MCS-90 Endorsement attached to its policy.

**RESPONSE: Admit.**

6. Although Wesco was aware of Plaintiff's claim, it paid Wilson the entirety of the MCS-90 proceeds.

**RESPONSE: Admit.**

7. The Georgia Motor Vehicle Crash Report identified King's Way USA Transport ("King's Way") as the owner of the rig, not One Way Hauling Express ("One Way").

**RESPONSE: Admit the Georgia Motor Vehicle Crash Report identified King's Way USA Transport ("King's Way") as the owner of the rig. Plaintiff denies that the Georgia Motor Vehicle Crash Report is definitive on ownership of the rig.**

8. In his deposition, Lobaina recognized King's Way as one of the entities operated by Ariel Calzada ("Calzada") and his wife Isabel Cordero ("Cordero"). *See* applicable portions of the June 25, 2021 Deposition of Isidro Alex Lobaina Loyola ("Lobaina's Dep.").

**RESPONSE: Admit.**

9. Lobaina testified that he would be told by the principals which of the three companies they ran he would be driving for. *See* Lobaina Dep., pp. 74:1-75:21, 76:4-76:21.

**RESPONSE: Deny. The deposition sections cited by Defendant above make clear only Ariel told Lobaina what to do.**

10. Calzada also operates First Time and One Way.

**RESPONSE: Plaintiff admits Calzada operated One Way at the time of the wreck. However, Calzada is not currently a member of One Way, nor does he have a financial interest in One Way. Plaintiff denies Calzada operated First Time.**

11. At the time of the loss, King's Way was not authorized by the USDOT to haul goods in interstate commerce. *See* publicly available information at United States Department of Transportation, Federal Motor Carrier Safety Administration, Licensing and Insurance Public, History, https://li-public.fmcsa.dot.gov/LIVIEW/pkg_carrquery.prc_authorityhistory, last visited March 1, 2024.

**RESPONSE: Admit.**

12. No information has been produced concerning whether King's Way was an active entity in 2019 or whether it was insured. *See* the record, generally.

**RESPONSE: Plaintiff objects to Defendant's citation "*See* the record, generally" as it provides no specificity to support the statement Defendant**

**alleges is a fact. As such, Plaintiff does not know what part of the record upon which Defendant relies.**

**Plaintiff denies no information has been produced concerning whether King's Way was an active entity in 2019 or whether it was insured. The Georgia Motor Vehicle Crash Report identified King's Way USA Transport ("King's Way") as the owner of the rig. (Dkt 102-7, The Georgia Motor Vehicle Crash Report) Also, a lease shows King's Way leasing the rig to One Way. (DKT 90-6). Both illustrate King's Way was acting as an active entity in 2019.**

13. First Time was an authorized motor carrier with active authority on the date of loss. *See* publicly available information at United States Department of Transportation, Federal Motor Carrier Safety Administration, Licensing and Insurance Public, History https://li-public.fmcsa.dot.gov/LIVIEW/pkg_carrquery.prc_authorityhistory, last visited July 29, 2024.

**RESPONSE: Admit.**

14. One Way was an active motor carrier in 2019. *See* publicly available information at United States Department of Transportation, Federal Motor Carrier Safety Administration, Licensing and Insurance Public, History, https://lipublic.fmcsa.dot.gov/LIVIEW/pkg_carrquery.prc_authorityhistory.

**RESPONSE: Admit.**

15. According to Lobaina, Cordero and Calzada would decide which motor carrier's authority their drivers would operate their vehicles under depending in part on which carrier's authority was in force at a given time and would change all of their vehicles' placards accordingly. *See* Lobaina Dep., pp. 74:1-75:21, 76:4-76:21, at Exhibit 5. All of their vehicles would operate under the same motor carrier's authority at a given time.

**RESPONSE: Deny. Lobaina testified Calzada would simply assign him a truck and load. Nowhere does the testimony cited by Defendant reference motor carrier authority or Cordero.**

16. One Way was insured by National Indemnity Company of the South ("National Indemnity") under policy number 74TRS100541, which went into effect on May 5, 2019 (the "National Indemnity Policy").

**RESPONSE: Admit.**

17. The National Indemnity Policy listed three tractors, but the Accident Vehicle was not one of them.

**RESPONSE: Admit.**

18. Plaintiff sued Lobaina, Kings Way, First Time, One Way, and others in this Court on March 5, 2021.

**RESPONSE: Admit.**

19. National Indemnity received no notice of the suit prior to the Court's entry of default.

**RESPONSE: Admit.**

20. On February 15, 2023, the Court entered a default judgment against various defendants, including One Way and Lobaina, in the Underlying Lawsuit.

**RESPONSE: Admit. February 15, 2023 is the date the Clerk entered the final judgment.**

*B. BMC-91X Filings and the MCS-90 Endorsement*

21. No coverage is available from National Indemnity under its base policy, and Old Republic maintains that no coverage is available under its base policy, either. Instead, Cagle seeks recovery from defendants under the MCS-90 each issued on behalf of One Way at different points in time.

**RESPONSE: Plaintiff objects to this statement as it is a compound statement. Plaintiff admits he is seeking to recover under the MCS-90's that were in effect at the time of the wreck which provided MCS-90 bond surety for One Way.**

22. The Licensing and Insurance website for the United States Department of Transportation ("USDOT") shows that One Way was first authorized in 2014 and has been continuously authorized since 2016.

**RESPONSE: Admit.**

23. Various insurers have provided One Way financial security (one at a time) since then.

**RESPONSE: Deny. For July 16, 2019, both National Indemnity and Old Republic had in place active MCS-90 endorsements for One Way.**

24. National Indemnity issued its policy to One Way effective May 5, 2019, and made a $750,000[1] BMC-91x filing effective that same day.

**RESPONSE: Admit.**

25. An MCS-90 referencing limits of $750,000 was attached to the National Indemnity Policy.

**RESPONSE: Admit.**

26. Unbeknownst to National Indemnity when it issued its policy, One Way was utilizing several rigs in its business, including some owned by Ryder.

**RESPONSE: Deny. Exhibit 15 does not show any communications between National Indemnity and One Way or any representative of One Way. There is no evidence to show what National Indemnity knew or did not know at the time it provided insurance coverage to One Way. Nor has National**

---

[1] $750,000 is the minimum amount of financial security required for motor carriers who haul no hazardous or semi-hazardous cargoes, 49 C.F.R. § 387.9, and was the amount of security One Way required.

**Indemnity provided evidence of what it knew or did not know while it continued to provide coverage through November 3, 2019. [Exhibit 2, Def.'s Initial Discl., Bates NICO 000015].**

27. These rigs were not scheduled under the National Indemnity Policy. *See* National Indemnity Policy at Exhibit 8, generally and at NICO 000024 and 000026.

**RESPONSE: Admit.**

28. During the policy period, National Indemnity became aware, through USDOT inspection data, that One Way was using vehicles that were not scheduled on its policy. *See* Central Analysis Bureau, Detailed Inspection Reports for One Way.

**RESPONSE: Deny. National Indemnity has provided no evidence that it became aware, through USDOT inspection data, that One Way was using vehicles that were not scheduled on its policy.**

29. In August 2019, the insurance broker AON (the second largest brokerage in the world in 2023[2]) became aware of National Indemnity's concern about the use of unscheduled vehicles.

---

[2]*See* https://www.businessinsurance.com/article/00010101/STORY/912358433/Top-insurancebrokers,-No-2.Aon-PLC#:~:text=Aon%20reported%20%2412.4%20billion%20in,of%20the%20world's%20largest%20brokerages.

**RESPONSE: Deny. Exhibit 15 does not show that AON became aware of National Indemnity's concern about the use of unscheduled vehicles.**

30. On August 15, 2019, AON's Ryder Service team asked if Ryder would arrange to have an MCS-90 issued since the company had been leasing Ryder trucks.

**RESPONSE: Admit.**

31. Kelli Collins, identified in the email as a Senior Underwriter with Ryder Fleet Protection Solutions, explained that some insurers do not permit "split fleets," that is, having a part of the carrier's fleet covered under their insurance policy, and then leasing other vehicles from Ryder which would be insured through Ryder.

**RESPONSE: Deny. Exhibit 15 does not say "some insurers" do not permit split fleets. Rather, it references Progressive and Hallmark only. Quoting, "Whom is their insurance provider. If it is Progressive or Hallmark they will not allow split fleets."**

32. Kelli Collins suggested issuing the BMC 91X filing and having One Way hold them harmless for losses involving non-Ryder vehicles, so the customer, One Way, could keep its current insurance with National Indemnity.

**RESPONSE: Admit.**

33. Donald B. Golden, Inside Business Development Manager at Ryder, and Ryder's Mario Cotarelo were also on the email chain.

**RESPONSE: Admit.**

34. On that same day, August 15, 2019, Donald Golden explained to Kelli Collins and Mario Cotarelo that:

> [T]his is an extremely urgent matter… Our client One Way Hauling Express, leases 5 tractors with us and has our coverage for both liability and physical damage. The insurance company who insures their non- Ryder vehicles has told our client that they will either charge them for duplicate insurance coverage on our leased vehicles or cancel their insurance on their non-Ryder vehicles since they do the filings for them.

**RESPONSE: Admit.**

35. Kelli Collins responded to the August 15, 2019 email, "Mario we can do the filing. The filing will be effective 6/14/2019. AON please issue the filing."

**RESPONSE: Admit.**

36. In a different e-mail, Kelli Collins explained that "we can back date to the date when they got the Ryder units."

**RESPONSE: Admit.**

37. A filing was made for One Way dated back to June 14, 2019, and Old Republic's MCS-90 Endorsement shows a liability limit of $1,000,000. *See* communications at Exhibit 17; Federal Motor Carrier Safety Administration Licensing and Public Information at Exhibit 12; and Old Republic's MCS-90 Endorsement at Exhibit 18.

**RESPONSE: Admit.**

C. *Effective June 14, 2019, the National Indemnity Filing was Replaced by Old Republic's Filing*

38. At the time of the loss, some vehicles One Way utilized in its business were covered under the National Indemnity Policy and others were covered under the policy that Old Republic issued to Ryder and its customers. *See* National Indemnity Policy at Exhibit 8, NICO 000024 and 000026, and the declarations pages of Old Republic's Policy at Exhibit 19. However, the Accident Vehicle was not covered by National Indemnity's Policy, and Old Republic maintains it was not covered by its policy either.

**RESPONSE: Admit.**

39. One Way and its principals did not appear in the tort action, hence the default judgment against them.

**RESPONSE: Admit.**

40. Ultimately, the Court found that One Way, among others, was vicariously liable for Lobaina's negligence and was liable as a defaulting defendant.

**RESPONSE: Admit.**

41. At the scene of the accident, the Accident Vehicle had a First Time placard on the door.

**RESPONSE: Admit.**

42. The conclusion that the Accident Vehicle was being operated under First Time's USDOT motor carrier authority conforms with the Georgia Motor Vehicle Crash Report, the photograph showing a First Time placard on the door of the truck at the scene of the accident, and the testimony of John Pecoraro.

**RESPONSE: Deny. First Time was not the sole for-hire motor carrier responsible for the load being hauled at the time of the wreck. (Dkt 90-2, Affidavit of Ariel Calzada, ¶ ¶ 3-10.)**

**Additionally, the use of the word "conclusion' is argumentative, not a fact. It is unclear whose "conclusion" to which National Indemnity is referring. However, Ariel Calzada and Loyola both refute this "conclusion". (See Dkt. 90-1,** *Plaintiff's Statement Of Additional Undisputed Material Facts,* **¶ ¶ 27-31.) Lobaina did not know which company for which he was driving, believing he worked for Ariel since "he was the one that paid." (Exhibit 3, Deposition of**

**Isidro Lobaina, pg. 28:1-13.). Finally, Ariel Calzada admits One Way secured the load involved in the wreck, and that Lobaina was operating for and on behalf of One Way at the time of the wreck. (Dkt 90-2, Affidavit of Ariel Calzada, ¶ ¶ 3-10.)**

43. The USDOT's Licensing and Insurance website shows that National Indemnity made a BMC 91x filing on May 5, 2019, and that filing – and the MCS-90 Endorsement that accompanied it – were replaced by the Old Republic filing dated June 14, 2019.

**RESPONSE: Deny. The USDOT's Licensing and Insurance website shows that National Indemnity does not show National Indemnity's policy was "replaced by the Old Republic filing dated June 14, 2019." Rather, it shows when certain documents were filed.**

**Additionally, National Indemnity's policy was scheduled to end May 5, 2020. (Dkt 102-1, National Indemnity Insurance Company's Policy, Policy No. 74TRS100541) National Indemnity admits it did not attempt to cancel the policy prior to the day of the wreck, July 16, 2019. (Dkt 90-8 National Indemnity's Response to Plaintiff's Requests for Admissions, ¶ 1) See Doc. 47-1,** *Plaintiff's Statement Of Undisputed Material Facts,* **¶¶ 5-6.**

This 19th day of August 2024.

**/s/ Mark Alexander**
Mark W. Alexander, Esq.
Georgia Bar No. 008930
malexander@smf-law.com
Stewart, Melvin & Frost, LLP
P.O. Box 3280
Gainesville, GA 30501
Phone: (770) 536-0101
Fax: (678) 207-2002

**/s/ Danny Ellis**
Danny R. Ellis, Esq.
Georgia Bar No. 924074
danny@truckwreckjustice.com
1419 Market Street
Chattanooga, TN 37402
Phone: (423) 265-2020
Fax: (423) 265-2025

**/s/ Andrew Gould**
Andrew Q. Gould, Esq.
Georgia Bar No. 826368
andrew@princemay.com
750 Hammond Drive, Bldg. 12
Sandy Springs, GA 30328
Phone: (678) 534-1980
Fax: (404) 806-0624

*Attorneys for Plaintiff*