IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FREDDIE CAGLE, | § |
| | § |
| Plaintiff, | § |
| | § Civil Action No. |
| v. | § |
| | § 2:23-CV-140-RWS |
| NATIONAL INDEMNITY | § |
| COMPANY OF THE SOUTH, and | § |
| OLD REPUBLIC INSURANCE | § |
| COMPANY, | § |
| | § |
| Defendants. | § |

**PLAINTIFF'S RESPONSE TO DEFENDANT OLD REPUBLIC INSURANCE COMPANY'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff, Freddie Cagle, by and through his counsel, and responds to Defendant Old Republic Insurance Company's Statement of Facts in Support of Its Motion For Summary Judgment:

**FACTS**

1. In January 2019, Ryder Truck Rental, Inc. ("Ryder") entered into a Truck Lease and Service Agreement ("TLSA") with One Way, under which it leased

commercial vehicles to One Way and agreed to provide liability insurance for the leased vehicles.

**RESPONSE: Plaintiff admits One Way Hauling Express Co. leased at least five (5) trucks from Ryder, and Old Republic provided liability insurance for the leased trucks. Plaintiff denies that Exhibit 1 shows a truck lease and service agreement to the extend Old Republic suggests that it does.**

2. On July 16, 2019, Isidro Alex Lobaina Loyola ("Loyola") was involved in an accident on Interstate-85 in Georgia (the "Accident"), in which the tractor-trailer (the "Unit") he was operating struck a van driven by Kent Wilson ("Wilson") and caused a Dodge Caravan driven by Cagle off the road.

**RESPONSE: Admit.**

3. The below photograph of the tractor taken at the scene of the Accident shows a "First Time Transport, Inc." decal on the tractor cab, bearing United States Department of Transportation No. 3180047 and Motor Carrier No 125574.



**RESPONSE: Admit.**

4. The Accident Report identified King's Way as the owner of the tractor-trailer and First Time as the motor carrier (DOT No. 3180047).

**RESPONSE: Admit.**

5. In August 2019, without advising Ryder of the Accident, One Way requested that Ryder file the BMC-91X with the Federal Motor Carrier Safety Administration ("FMCSA") because National Indemnity reportedly told One Way that it would either charge One Way for insurance on the Ryder-leased vehicles or

cancel the National Indemnity policy covering vehicles that One Way did not lease from Ryder. (Ex. 1).

**RESPONSE: Plaintiff admits One Way requested Ryder to file the BMC-91X in August 2019. Plaintiff denies Exhibit 1 makes clear it was National Indemnity that "told One Way that it would either charge One Way for insurance on the Ryder-leased vehicles or cancel the National Indemnity policy covering the vehicles that One Way did not lease from Ryder." Also, Ryder never asked One Way about any prior wrecks. See Defendant Old Republic's Exhibit 1. In August 2019, no representative of Old Republic requested information from either Yadiel Cordero or Ariel Calzada about prior wrecks involving One Way before insuring One Way with an effective date of June 14, 2019. (Dkt 90-2, Calzada Aff. ¶ 11.)**

6. Based on this request, Ryder agreed to file the BMC-91X and directed its insurance agent to request that Old Republic issue the MCS-90 endorsement, effective June 14, 2019. (Ex. 1).

**RESPONSE: Admit.**

7. In March 2021, Cagle filed a complaint against Wesco, King's Way, First Time and Loyola in the United States District Court for the Northern District of

Georgia for bodily injuries he sustained in the Accident (the "Cagle Action"). (Ex. 5).

**RESPONSE: Admit.**

8. The complaint alleged that King's Way owned the Unit Loyola was operating at the time of the Accident under the DOT authority of First Time and that Wesco insured First Time. (*Id.* at pp. 1-2).

**RESPONSE: Admit.**

9. The complaint alleged in the alternative that King's Way was an interstate motor carrier, a lessor of the Unit, a regulatory employer of First Time and/or Loyola, and an entrustor of the tractor-trailer to First Time and Loyola. (*Id.* at ¶¶ 33-45).

**RESPONSE: Admit.**

10. The complaint also pleaded that First Time was an interstate motor carrier and entrustor of the Unit to Loyola. (*Id.* at ¶¶ 46-47).

**RESPONSE: Admit.**

11. The complaint asserted the following counts: I and II – negligent hiring, training, entrustment, retention and maintenance against King's Way and First Time, bindrespectively; III – negligence against Loyola; IV – vicarious liability against

King's Way and First Time; V – punitive damages; VI – attorney's fees; and VII – direct action against Wesco.

**RESPONSE: Admit.**

12. On June 7 2021, Wesco settled the Wilson Action by paying the $750,000 MCS-90 endorsement per-accident limit to Wilson. (Ex. 6).

**RESPONSE: Admit.**

13. On July 7 2021, Cagle filed an amended complaint, which named as additional defendants One Way, AC Nationwide Transport, LLC ("AC Nationwide"), Ariel Calzada ("Calzada"), Isabel Cordero ("Cordero") and Old Republic. (Ex. 7). The amended complaint alleged that AC Nationwide and One Way were interstate motor carriers controlled by Calzada and Cordero. (*Id.* at ¶¶ 154-156).

**RESPONSE: Admit.**

14. Cagle pleaded in the alternative that One Way, AC Nationwide, Calzada and Cordero were all regulatory employers of First Time and Loyola and lessors of the tractor-trailer. (*Id.* at ¶¶ 157-176).

**RESPONSE: Admit.**

15. The amended complaint then asserted the same claims against One Way, AC Nationwide, Calzada and Cordero as Cagle had asserted against First Time and King's Way. (*Id.* at ¶¶ 177-244, 276-285).

**RESPONSE: Admit.**

16. The amended complaint asserted claims for illegal brokering and double brokering against One Way, King's Way and AC Nationwide, (*id. at* ¶¶ 245- 275) and asserted a direct action against Old Republic. (*Id.* at ¶¶ 286-294).

**RESPONSE: Admit.**

17. In support of its motion for summary judgment in the Cagle Action, Wesco Insurance Company's Statement of Material facts stated: "Loyola was driving under the DOT authority of First Time Transport, Inc." (Ex. 9 at ¶ 3; *see also* Ex. 8 at ¶ 2).

**RESPONSE: Admit.**

18. In his opposition to Wesco's motion for summary judgment in the Cagle Action, Cagle conceded that Loyola was "operating the tractor and trailer under the DOT authority for Defendant First Time." (Ex. 10 at p. 3 of 20).

**RESPONSE: Deny. Defendant misrepresents the record. Plaintiff made clear it made the admission "for purposes of summary judgment motion" only. (Exhibit 1, Plaintiff's Response to Defendant Wesco's Statement of Material**

**Facts as to Which No Genuine Issues Remain to Be Tried in Support of Defendant Wesco's Motion for Summary Judgment, ¶ 3.)**

19. On December 6, 2021, the Court entered an Order granting Wesco's motion for summary judgment. *Cagle v. Wesco Ins. Co.*, 2021 U.S. Dist. LEXIS 253756 (N.D. Ga. Dec. 6, 2021). In its Order, the Court stated: "Mr. Loyola drove for King's Way, First Time, and One Way, but at the time of the accident, *he was driving under the Department of Transportation authority for First Time*." (*Id.* at 3). (Emphasis added).

**RESPONSE: Admit the order says this. However, Defendant's Exhibit 10 is not the order granting Wesco's motion for summary judgment. Rather, Defendant's Exhibit 11 is the order and the quotation referenced by Defendant is located on page 2.**

20. On October 4, 2022, the Court entered an Order in the Cagle Action granting Cagle's motion for partial summary judgment against Loyola. (Ex. 10). Therein, the Court found that Loyola "was driving under the Department of Transportation authority of First Time." (*Id.* at p. 2 of 13).

**RESPONSE: Admit the order says this. However, Defendant's Exhibit 10 is not the order granting Wesco's motion for summary judgment. Rather, Defendant's Exhibit 11 is the order.**

21. On November 30, 2022, Cagle was the sole party to appear for a pretrial conference. (Ex. 13). At that time, Cagle informed the Court that he was requesting factual findings to support claims to trigger the defaulting defendants' MCS-90 endorsements. (*Id.* at 13:8-17).

**RESPONSE: Admit.**

22. On February 6, 2023, Cagle alone appeared for a bench trial, and on March 14, 2023, the Court entered its Findings of Fact and Conclusions of Law (the "Default Findings"). (Ex. 14). Therein, the Court found that Loyola did not know the identity of his employer on the date of the Accident. (*Id.* at ¶ 50).

**RESPONSE: Admit.**

23. On or about January 30, 2024, Plaintiff responded to Old Republic's interrogatories by adopting the factual findings in the Default Findings and the factual allegations in the Cagle Action complaint, which necessarily includes the allegations that First Time operated the Unit at the time of the Accident. (Ex. 12).

**RESPONSE: Admit. Plaintiff's adoption of the factual findings in the Default Findings also included the factual allegations contained in Plaintiff's amended complaint, which necessarily includes Defendant Lobaina was operating on behalf of One Way at the time of the wreck (Dkt 90-7, Plaintiff's Amended Complaint, ¶¶ 157, 177-190, 233-239).**

24. On or about March 19, 2024, Old Republic propounded a Rule 30(b)(6) subpoena to One Way Hauling Express Co. and Rule 45 subpoenas to Ariel Calzada, Yadiel Calzada Cordero and Isabel Cordero. (Exs. 15, 16, 17, 18).

**RESPONSE: Denied. Old Republic never served One Way Hauling Express Co., Ariel Calzada, Yadiel Calzada Cordero or Isabel Cordero with the subpoenas referenced above. To Plaintiff's knowledge, Old Republic made no efforts to do so. Old Republic did not notify Plaintiff that it had not served One Way Hauling Express Co., Ariel Calzada, Yadiel Calzada Cordero or Isabel Cordero with the subpoenas until Plaintiff's counsel was on the plane to fly to Florida for the depositions. (Dkt 94-4, April 10, 2024 email.) Additionally, Ariel Calzada was not a member, nor had a financial interest in One Way on March 19, 2024 following a marital dissolution agreement with his now ex-wife Isabel Cordero.**

25. On June 6, 2024, Isabel Cordero and Yadiel Calzada Cordero appeared in response to the Rule 45 subpoenas. (Exs. 19, 20).

**RESPONSE: Admit**  *[Commented [AG1]: These are just the three subpoenas.]*

26. Although Ms. Cordero and Mr. Calzada Cordero identified Calzada as the person most knowledgeable regarding the topics identified in the Rule 30(b)(6) subpoena, Mr. Calzada did not appear for a deposition. (*Id.*).

**RESPONSE: Plaintiff admits Mr. Calzada did not appear for the deposition. Mr. Calzada was not personally served with a subpoena, nor was he served through his attorney, despite Old Republic possessing the contact information for Mr. Calzada's attorney since April 17, 2024. (Dkt 94-6, April 17, 2024 email.) Old Republic never made an attempt to depose Mr. Calzada, even after it learned Mr. Calzada Cordero identified Mr. Calzada as the person most knowledgeable regarding the topics identified in the Rule 30(b)(6) subpoena.**

27. One Way adopted Mr. Calzada Cordero's deposition testimony on behalf of One Way. (Ex. 20 at 83:5-11).

**RESPONSE: Admit.**

28. On behalf of One Way, Mr. Calzada Cordero testified as follows[1]:

---

[1] As an initial matter, in responding to each bullet point under number 28, Plaintiff prefaces his response with the following: Yadiel Cordero testified he was not the most knowledgeable about the workings of One Way from 2014 to 2023. (Deposition of Yadiel Cordero, pp. 41:23-42:8.) Yadiel told Old Republic that his father was the most knowledgeable about the workings of One Way from 2014 to 2023. id. Ariel Calzada is no longer affiliated with One Way, so cannot represent One Way pursuant to a Rule 30(b)(6) subpoena. However, throughout his testimony, Yadiel responds to questions by instructing the lawyers to ask his father. Yadiel made it clear that he cannot answer questions about the workings of One Way from 2014 to 2023.

- One Way has no reason to believe that First Time was not the motor carrier operating the Unit at the time of the Accident (*id*. at 21:12-23; 22:22-23:2; 26:19-23; 27:3-6);

**RESPONSE: Denies. This generalized statement mischaracterizes the full testimony in this case. To be accurate, Yadiel Cordero, who was not the President of One Way at the time of the wreck, does not know if First Time was or was not the motor carrier operating the Unit at the time of the Accident. (Exhibit 2, Deposition of Yadiel Cordero pp. 21:12-23; 22:22-23:2; 26:19-23.) Isabel Cordero was the President of One Way at the time of this wreck. (Dkt 90-4, Deposition of Isabel Cordero, p. 32:19-22.)**

- One Way does not know if a bill of lading exists for the cargo being hauled at the time of the Accident (*id.* at 25:1-3);

**RESPONSE: Admit.**

- One Way does not know who placed the First Time decal on the tractor involved in the Accident (*id.* at 26:8-18);

**RESPONSE: Admit.**

☐ One Way does not remember if One Way was at all related to the tractor, trailer or load that was involved in the Accident (*id.* at 27:25-28:11);

**RESPONSE: Admit. However, Mr. Cordero Calzada repeatedly directed counsel to speak with Ariel Calzada regarding the workings of One Way (See generally, Deposition of Yadiel Calzada Cordero). Additionally, Isabel Cordero was the President of One Way at the time of this wreck. (Deposition of Isabel Cordero, p. 32:19-22.)**

☐ One Way cannot identify its partners, members, officers, directors, owner or employees as of July 16, 2019 (*id.* at 35:3-6);

**RESPONSE: Deny. Yadiel Cordero and Ariel Calzada were employees of One Way at the time of the wreck. (Deposition of Yadiel Cordero, p. 9:16-17). Loyola was an employee of One Way at the time of the wreck, and was paid by One Way the day before the wreck at issue. (Deposition of Yadiel Cordero, pp. 71:23-72:2, 48:6-49:8; Affidavit of Ariel Calzada, ¶ 6).**

☐ One Way cannot identify its organizational or corporate structure (*id.* at 38:12-14);

**RESPONSE: Deny. Yadiel Cordero is the President of One Way. (Deposition of Yadiel Cordero, p. 41:16-18)**

☐ One Way does not know if Mr. Loyola had a relationship with First Time in 2019 (*id.* at 37:17-19); and

**RESPONSE: Admit.**

☐ One Way does not know where Mr. Loyola's records of duty or driving logs for the relevant time period are (*id.* at 38:15-21).

**RESPONSE: Admit.**

This 19th day of August 2024.

**/s/ Mark Alexander**
Mark W. Alexander, Esq.
Georgia Bar No. 008930
malexander@smf-law.com
Stewart, Melvin & Frost, LLP
P.O. Box 3280
Gainesville, GA 30501
Phone: (770) 536-0101
Fax: (678) 207-2002

**/s/ Danny Ellis**
Danny R. Ellis, Esq.
Georgia Bar No. 924074
danny@truckwreckjustice.com
1419 Market Street
Chattanooga, TN 37402
Phone: (423) 265-2020
Fax: (423) 265-2025

**/s/ Andrew Gould**
Andrew Q. Gould, Esq.
Georgia Bar No. 826368
andrew@princemay.com
750 Hammond Drive, Bldg. 12
Sandy Springs, GA 30328
Phone: (678) 534-1980
Fax: (404) 806-0624

*Attorneys for Plaintiff*