## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| FREDDIE CAGLE, | |
| Plaintiff, | |
| vs. | CIVIL ACTION FILE NO.: 2:23-cv-140-RWS |
| NATIONAL INDEMNITY COMPANY OF THE SOUTH and OLD REPUBLIC INSURANCE COMPANY, | |
| Defendants. | |

### REPLY IN SUPPORT OF DEFENDANT NATIONAL INDEMNITY COMPANY OF THE SOUTH'S MOTION FOR SUMMARY JUDGMENT

National Indemnity Company of the South ("National Indemnity"), by and through its undersigned counsel, submits this reply brief in further support of its Motion for Summary Judgment, and shows this Court the following:

### INTRODUCTION

Plaintiff repeatedly conflates two very different concepts: (i) having motor carrier authority, and (ii) using that authority. Only one motor-carrier can be the for-hire motor carrier at any given time, and here, the reliable facts support that the motor carrier for-hire was not One Way Hauling ("One Way"). The only evidence Plaintiff presents that arguably supports his position that One Way was the for-hire motor

carrier is the affidavit of Ariel Calzada. Old Republic Insurance Company ("Old Republic") has raised serious questions about that affidavit, but more to the point, there is no basis for accepting that with no written records, no bill of lading, and no other evidence, Calzada remembers precisely which of the multiple motor carriers he controlled was operating a particular truck five years ago under its motor carrier authority.[1] While Calzada purports to attest that One Way was the for-hire motor carrier at the time of the accident, based on a broker load board he supposedly used to book the load, he fails to provide a confirmation from the load board or a screen shot showing he booked the load as he now describes.[2] The actual, objective evidence (the Georgia Motor Vehicle Crash Report, the USDOT report, the picture of the placard on the side of the truck, the testimony of Lobaina, and the affidavit of John Pecoraro) identifies First Time as the carrier.[3]

Even if this Court were to determine that One Way was the motor carrier for-hire, the only remaining issue to be determined is whose MCS-90 applies: National Indemnity's or Old Republic's. Plaintiff's contention that two MCS-90s can apply

---

[1] Calzada, who, at the time of the accident, was principal of several companies he created, is the author of the current scenario. It was he who assigned a driver to operate a vehicle that he knew he was not paying an insurance premium for. He also failed to preserve the bill of lading.

[2] *See* the discussion, *infra,* relating to the facts of *Nat'l Specialty Ins. Co. v. Martin-Vegue*, 644 Fed. Appx. 900 (11th Cir. 2016).

[3] Lobaina testified he recalls hauling the load on July 16, 2019 for First Time or King's Way. *See* Statement of Additional Material Facts, Doc. 103, ¶ 45.

is patently incorrect. Only one MCS-90 can be triggered, and it is Old Republic's. Below National Indemnity addresses select arguments within Plaintiff's brief. National Indemnity relies on its previous filings for any arguments not specifically addressed herein.

## ARGUMENT AND CITATION TO AUTHORITY

I.    **While Multiple Defendants May Be Liable In A Tort Case, There Is Only One For-Hire Motor Carrier Active At The Moment Of Loss, And The Only MCS-90 That Can Be Triggered Is The One Issued To That Motor Carrier.**

On pages 6 through 9 of his response brief, Plaintiff argues that a judgment creditor may recover under more than one MCS-90 endorsement for the same loss. That proposition is wrong. As discussed in more detail below, while a plaintiff may obtain a judgment against multiple defendants, and even multiple entities licensed to act as a motor carrier (as Plaintiff has done here), only one of those defendants can be the for-hire motor carrier at the time of the loss. This distinction is crucial. Thus, while multiple insurance policies, subject to their terms and conditions, could be triggered in the same case, no more than one MCS-90 can apply.[4]

Plaintiff secured a default judgment on February 14 against the truck driver (Loyola, whose fault was apportioned at 50%), four entities (King's Way, AC

---

[4] In most cases where a motor carrier is found liable, *no* MCS-90 will apply since the motor carrier for-hire should have insurance coverage in the mandated limits covering the vehicle involved in the loss. The only reason there is any discussion about the MCS-90 in this case is that the principal of the four trucking companies that defaulted did not purchase insurance for the rig involved in the accident.

Nationwide, One Way and First Time) that were or had previously been USDOT-authorized trucking companies, and the two principals of those entities, who were jointly referred to as "Defendants in Default."  None of the entities that Ariel Calzada and Isabel Cordero owned had coverage for the rig that Lobaina was operating. It is for that reason that the question of MCS-90 exposure has arisen here.

It is Plaintiff's misfortune that non-party Kent Wilson, who was also injured in the collision, was first to file suit. Wilson sued First Time, whose insurer was Wesco Insurance Company. Wesco did not cover the 2014 Freightliner but concluded that First Time was the motor carrier whose authority was being used at the time of the loss, and Wesco paid Wilson $750,000 under its MCS-90. Plaintiff sued Wesco as well. This Court, by order dated December 6, 2021, rejected Plaintiff's argument that Wesco had acted improperly and held that in paying the $750,000 limits of its MCS-90 endorsement, Wesco had no further obligation related to the accident at issue.

At that point, Plaintiff's focus shifted to One Way. He secured a default judgment against One Way (and others) in February 2023, and in July 2023, he filed this suit to recover under the MCS-90 endorsements issued successively to One Way by National Indemnity and Old Republic.

As Old Republic stated in its August 7, 2024 brief in opposition to Plaintiff's motion for summary judgment (p. 2), Plaintiff's counsel had previously taken the

4

position before the Court at oral argument and in his brief that First Time was the motor carrier whose authority was being used (when Plaintiff's target was Wesco). Plaintiff now argues that either One Way was the motor carrier for-hire, or that there can be more than one carrier for-hire. The former is unsupported by any objective evidence, and the latter is legally incorrect.

While multiple defendants can be liable for the same loss (whether for direct negligence or vicariously) even if they are all motor carriers, only one can be the motor carrier for-hire whose authority was being used at the time of the loss. *See* 49 C.F.R. § 390.21T (commercial vehicles subject to USDOT jurisdiction must be marked with the name and USDOT number of the motor carrier operating the vehicle); 49 C.F.R. §373.101 (Motor carriers subject to USDOT regulation must issue a bill of lading identifying itself as the motor carrier and providing details about the consignor, consignee and cargo, and  the motor carrier must keep records of the transaction;  49 C.F.R. Part 395 (Motor carrier and driver are responsible to have in place electronic logging system that keeps track of driver's hours of service for that motor carrier). The MCS-90 endorsement is potentially triggered only if the motor carrier to whom it was issued was acting as the motor carrier for-hire (that is, if its USDOT motor carrier authority is being used). In this case, the Wesco MCS-90 was triggered and paid, albeit not to Plaintiff, since it had been issued to First Time, the motor carrier for-hire according to the investigating police officer.

Case law establishes a clear distinction between having motor carrier authority and being the motor carrier for-hire in a particular transaction. *See*, *e.g.*, *Herrod v. Wilshire*, 499 Fed. Appx. 753 (10th Cir. 2012) (which Plaintiff inaccurately cites as supporting his position.) In that case, a motorist was killed when a tire disconnected from the trailer portion of a rig being operated by a driver for DATS Trucking, a USDOT authorized motor carrier, and struck the decedent's car. DATS and its insurers settled with the estate. No MCS-90 was needed as the claim was paid under DATS's policy. The estate also sued Espenschied Transportation Corp., which leased the trailer portion of the rig to DATS. Espenschied confessed judgment, and the estate then sued Wilshire, which had insured Espenschied. The trailer, however, was not a covered auto under the Wilshire policy. Accordingly, the only possible exposure for Wilshire would have been under the MSC-90 it issued on behalf of Espenschied.

The Court of Appeals held that the issue was not whether Espenschied was an authorized motor carrier, but whether it was *acting as the motor carrier in the underlying scenario*. In fact, Espenschied had simply leased its trailer to DATS, which was the motor carrier whose authority was being used. The 10th Circuit held:

> As we construe the MCA (Motor Carrier Act which serves as the basis of the MCS-90 exposure) and relevant regulations, the financial responsibility requirements of the MCA – including the MCS-90 endorsement – apply only to for-hire motor carriers. See, e.g., 49 U.S.C. §§ 31139(b), 13102(14); 49 C.F.R. §§ 387.3, 387.5. Accordingly, in order to determine whether Wilshire's MCS-90 endorsement applies, it

must be determined initially whether Espenschied was acting as a for-hire motor carrier at the time of the accident.

*Id.* at 759. The Court went on to explain that while the District Court had concluded that Espenschied was a registered motor carrier, "it did not answer the question whether Espenschied was operating as a for-hire motor carrier at the time of the accident." *Id.* at 760. In case that was not clear enough, the Court wrote:

> The parties do not seem to dispute that Espenschied was a federally certified freight trucking company and that it had motor carrier authority at the time of the accident. Although this may be factually accurate, it does not answer the separate question whether Espenschied was transporting the goods of another for compensation at the time of the accident in order to qualify it as a for-hire motor carrier for purposes of triggering Wilshire's MCS-90 obligation.

*Id.* at f.n. 7.

On remand, the District Court held that Wilshire had no obligation under its MCS-90. *See* 2014 WL 6871259; 2014 U.S. Dist. LEXIS 169024; *see also LaGrange v. Boone*, 337 So. 3d 921, 927 (La. App. 3 Cir. 4/6/22); *Militello v. ICAN Logistics, Inc.*, 2018 WL 1750743 (W.D. Okla. 2018) ("The critical issue is whether Hongyue [the Wesco insured] was transporting the goods of another for compensation at the time of the accident…for purposes of triggering [Wesco's] MCS-90 obligation.") In our case, there is no reliable evidence that One Way was the motor-carrier transporting anything.

No less damaging to Plaintiff's argument, with facts astonishingly close to those of the present case, was the 11th Circuit's decision in *National Specialty*

*Insurance Co. v. Martin-Vegue*, 644 Fed. Appx. 900 (11th Cir. 2016). On page 9 of his response brief, Plaintiff attempts to distinguish the case, but his observation that the liability trial for one of the two motor carrier defendants had not yet taken place is irrelevant. In fact, citing to *Martin-Vegue,* the District Court in *Bennett v. Progressive Specialty Ins. Co.,* 2022 WL 420767 (M.D. Ala. Feb. 10, 2022), observed that the "applicability of an MCS-90 endorsement can and has been tested prior to the rendering of a judgment in the underlying action."[5] Plaintiff's attempt to distinguish the holding of this directly controlling 11th Circuit decision is unavailing.

In *Martin-Vague*, the plaintiff was killed in a Florida loss after being struck by a tractor-trailer which consisted of a tractor leased to ABS Transport, Inc. ("Transport") by an owner-operator, and a trailer owned by ABS Freight Transportation ("Freight") which was also leased to Transport. Both companies were insured, albeit under separate policies, by National Specialty. The principals of the two companies had been married to one another and they continued their business association after separating; he ran Freight, and she ran Transport. National

---

[5] In *Martin-Vegue*, there was already a settlement with the driver under which plaintiff was entitled to recover any other insurance which applied. National Specialty filed a declaratory judgment action to show that even assuming liability for the defendants it had no coverage or MCS-90 exposure under its policy. The parties understood that for the MCS-90 to apply the estate would need to get a judgment against Freight which it did not yet have. The court's decision established that even if it won such a judgment the MCS-90 would not apply. Thus, Cagle's attempt to distinguish *Martin-Vegue* is unavailing.

Specialty paid its limits under the Transport policy, but the plaintiff was also seeking recovery under the Freight policy or MCS-90.

The evidence showed that Freight booked a load on a "load board" that needed to be moved from California to Florida.[6] At the end of the day, though, the load was carried by Transport. Freight and Transport had interlocking relations – for instance, in booking loads, dispatchers from the two companies used the same domain name. Freight had leased the trailer to Transport. Transport's name was on a placard attached to the doors of the tractor involved in the loss. Questions of double-brokering among related companies were raised. In short, there are numerous parallels between *Martin-Vegue* and our case.

In *Martin-Vague*, the estate sued the driver and Transport alleging that Transport was the responsible motor carrier. National Specialty settled that claim for its policy limits. However, the settlement agreement permitted the plaintiff to recover additional coverage available to him. Plaintiff then sought payment under the National Specialty policy issued to Freight. National Specialty filed a declaratory judgment action asking the court to find that it had no exposure under its policy or MCS-90.

---

[6] In the instant matter, it has been asserted that One Way similarly booked the load in this manner, although no documentary proof has been provided.

The U.S. district court found that National Specialty had no exposure, and the 11th Circuit agreed. The relevant portion of the decision is Section B, which dealt with the MCS-90 issued on behalf of Freight. The court began by observing (in footnote 8) that for the MCS-90 to apply, the plaintiff would first need to win a judgment against Freight. The Court's conclusion was that even if there were such a judgment, the MCS-90 would not apply unless Freight had been the motor carrier for-hire. The Court ultimately concluded that it was Transport that was the for-hire motor carrier. Accordingly, even a judgment against Freight would not trigger the MCS-90, since such a judgment would not change that Transport was the motor carrier for-hire.

The same is true in our case. It is irrelevant that One Way sometimes paid Lobaina, or that One Way may have booked the load. The carrier whose authority was being used was First Time, and its MCS-90 was paid to the other claimant. In any given case at any given time, as noted above, there is only one motor carrier. And at any given time, there is only one MCS-90 that can apply to a loss. *Martin-Vegue* is directly on point, and like the 10th Circuit's *Herrod* decision and its progeny, precludes the possibility of Plaintiff recovering under One Way's MCS-90.

Likewise, *Fairmont Specialty Ins. Co. v. 1039012 Ont. Inc.*, 2011 WL 3651333 (N.D. Ind. Aug. 19, 2011), also does not support Plaintiff's position. It is

true that the *Fairmont* court held that Fairmont owed the MCS-90 limit on its filing for defendant Ontario, the lessee motor carrier, even after plaintiff had already recovered $750,000 from the insurer of the lessor of the rig, Hummer. The key factor was that Fairmont's insured (Ontario), the lessee of the rig, was the motor carrier for-hire. That is why collection of Fairmont's MCS-90 was permissible. Here, because One Way was not the motor carrier for-hire, its MCS-90 is not triggered.

## II.    The Available Evidence Established That First Time's Motor Carrier Authority Was Being Used On The Date Of Loss, Not One Way's.

Plaintiff runs through a litany of arguments on pages 10 through 16. We respond, briefly, to each. On pages 10 through 11, Plaintiff alleges National Indemnity relies on an "antiquated notion" in arguing that First Time was the motor carrier. As we have previously stated, Plaintiff himself argued that First Time was the motor carrier, First Time's insurer agreed, and the Court adopted that finding. The argument over placard liability that Plaintiff is referring to relates to a problem that the Interstate Commerce Commission resolved in the 1980's - what happens if the owner operator of a truck under lease to a motor carrier fails to return the "placard," *i.e.*, the cardboard or metal marker attached to the doors of the tractor to show that it is being operated in the business of the motor carrier after the lease has terminated. That has nothing to do with our case. Here, the objective evidence all pointed to First Time as the motor carrier for-hire, and Wesco paid under its MCS-90 accordingly.

Plaintiff's argument on pages 11 through 12 is a repeat of his suggestion that both First Time and One Way were motor carriers at the time of loss. They certainly were both motor carriers, but both entities could not have been acting as the motor carrier for-hire for the load that was being carried by Lobaina – that role was First Time's alone. Indeed, for an MCS-90 to be triggered, there needs to be a judgment against the named insured motor carrier for a loss that occurs while that motor carrier is actually engaged in for-hire interstate commerce. This breaks down into at least two components: it must be the named insured that is actually the carrier performing the transportation, and the transportation must be interstate and otherwise within the scope of Sections 29 and 30 of the Motor Carrier Act of 1980, in the words of the MCS-90 itself.[7] The fact that on some other day the vehicle might be used in the insured's business for interstate commerce is not relevant. *Grange Indemnity Ins. Co. v. Burns,* 337 Ga. App. 532, 788 S.E.2d 138 (2016); *Progressive Gulf Ins. Co.*

---

[7] On page 12 of his brief, Plaintiff argues that "[t]he language of the MCS-90 makes no mention of 'DOT authority' as a prerequisite for their liability." That is not so. The MCS-90 reads (in pertinent part) that it "is intended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property with Sections 29 and 30 of the Motor Carrier Act of 1980 [Public Law 96-296, 94 Stat. 793 (July 1, 1980)] and the rules and regulations of the Federal Motor Carrier Safety Administration [a branch of USDOT]." It goes on to limit the insurer's exposure to cases "arising out of the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30…" Section 30 includes the following language: "The Secretary of Transportation shall establish regulations to require minimal levels of financial responsibility sufficient to satisfy liability amounts to be determined by the Secretary covering public liability, property damage and environmental restoration for the transportation of property for hire by motor vehicle in the United States from a place in one State to a place in another…". Motor carriers may only perform interstate operations after acquiring authority from USDOT and establishing proof of financial security. 49 USC. §§ 13901 *et seq.*; 49 C.F.R. Part 387.

*v. Jones,* 958 F.Supp. 2d 706, 714 (S.D. Miss. 2013); *Brunson v. Canal Ins. Co.*, 602 F. Supp. 2d 711, 718-19 (D.S.C. 2007); *Progressive Southeastern Ins. Co. v. Brown,* 182 N.E. 3d 197 (Ind. 2022).

Plaintiff, on pages 12 through 16, distinguishes at some length the 10th Circuit's decision in *Carolina Cas. Ins. Co. v. Yeates,* 584 F.3d 868 (2009). That case restricts rather than expands a plaintiff's opportunities to collect under an MCS-90 but is simply not relevant to the facts here.  The *Herrod* decision which followed three years later and which we have analyzed above, is the relevant 10th Circuit case.

## III.    Old Republic's BMC-91x Filing And MCS-90 Replaced National Indemnity's.

In line with his attempt to argue that he is entitled to not one, but two MCS-90 endorsements stacked one above the other, Plaintiff argues on pages 17 through 19 that Old Republic's filing and MCS-90 issued on behalf of One Way did not replace National Indemnity's, and that, somehow, both are available for Plaintiff to collect from. Of course, this is quite irrelevant if National Indemnity and Old Republic are correct that there is no MCS-90 exposure.

The USDOT does not keep or even seek copies of the actual policies. *See* the publicly available information at https://www.fmcsa.dot.gov/faq/how-can-motor-carrier-submit-proof-insurance-insurance-certificate-fmcsa.  All it is concerned with is ensuring that the BMC-91X or its equivalent is in place. When Old Republic filed its BMC-91X, it replaced the National Indemnity filing. Plaintiff's statement in his

brief that Old Republic's financial responsibility "supplements" rather than replaces National Indemnity's filing is without merit and defies the USDOT's plain language on its public Insurance History website that National Indemnity's filing was "replaced."



Indeed, effective 6/14/2019, the USDOT the website shows that the National Indemnity filing was "replaced" by the Old Republic filing. That was the conclusion of USDOT because that is what happens when a different insurer files a BMC-91X for the insured. Since the USDOT does not collect or review insurance policies, it is simply not relevant that the National Indemnity policy, which did not cover the accident rig, remained in effect. (The chart above and all updates thereto can be viewed on the USDOT website by clicking on this link https://li-

public.fmcsa.dot.gov/LIVIEW/pkg_carrquery.prc_getdetail, typing in the docket

number for One Way ( 858994) and following the prompts for "Insurance History."

## **CONCLUSION**

For the foregoing reasons, National Indemnity Company of the South

respectfully requests the Court grant its Motion for Summary Judgment.

This 3rd day of September, 2024.

**BARCLAY DAMON, LLP**                   /s/ Laurence J. Rabinovich
1270 Avenue of the Americas              LAURENCE J. RABINOVICH
New York, New York 10020                 New York Bar No.: 2033231
Telephone:  (212) 784-5800               *Admitted via Pro Hac Vice*
lrabinovich@barclaydamon.com


**BAKER, DONELSON, BEARMAN**              /s/ Melody H. Demasi
**CALDWELL & BERKOWITZ, PC**             MARK A. BARBER
Monarch Plaza, Suite 1500                Georgia Bar No. 036875
3414 Peachtree Road NE                   MELODY H. DEMASI
Atlanta, Georgia 30326                   Georgia Bar No. 988861
Telephone:  (404) 577-6000
Facsimile:   (404) 221-6501
mbarber@bakerdonelson.com                *Attorneys for Defendant National*
mdemasi@bakerdonelson.com                *Indemnity Company of the South*

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

I certify that this pleading complies with LR 5.1 and 7.1 as to font, spacing, and margins. I further certify that I served a copy of the foregoing **REPLY IN SUPPORT OF NATIONAL INDEMNITY COMPANY OF THE SOUTH'S MOTION FOR SUMMARY JUDGMENT** via CM/ECF to the following attorneys of record:

Danny R. Ellis
Truck Wreck Justice, PLLC
1419 Market Street
Chattanooga, TN 37402
danny@truckwreckjustice.com

Mark Alexander
Stewart, Melvin & Frost, LLP
P.O. Box 3280
Gainesville, Georgia 30503
malexander@smf-law.com

Andrew Gould
Princenthal, May & Wilson, LLC
750 Hammond Dr., Bldg. 12
Sandy Springs, Georgia 30328
andrew@princemay.com

Benjamin Yancey
Terry O. Brantley
Swift, Currie, McGhee & Hiers, LLP
1420 Peachtree Street, Suite 800
Atlanta, GA 30309
terry.brantley@swiftcurrie.com
ben.yancey@swiftcurrie.com

This 3rd day of September, 2024.

**BAKER, DONELSON, BEARMAN CALDWELL & BERKOWITZ, PC**

Monarch Plaza, Suite 1500
3414 Peachtree Road NE
Atlanta, Georgia 30326
Telephone:  (404) 577-6000
Facsimile:   (404) 221-6501
Email: mdemasi@bakerdonelson.com

 _/s/   Melody H. Demasi_
MELODY H. DEMASI
Georgia Bar No. 988861
*Attorney for Defendant National Indemnity Company of the South*